8   463<br>
119   235

## Stewart *et al. v.* Chadwick *et al.*

A contract of an administrator relating to the estate of the decedent, such as he had authority to make, will enure to the benefit of the heirs, after it shall be ascertained that it is not required to pay the creditors of the estate.

A contract concerning an interest in a claim, must be treated as personalty, and pertains to the administrator of the estate; and the right or interest will descend to the heirs of the decedent.

Where a tract of land is described in different modes by different instruments, parol evidence is admissible to show that the different descriptions embrace the same tract of land.

Where minor heirs are parties to a petition in chancery, it is not necessary that the petition should show the ages of such minor heirs.

The omission of an administrator to inventory a claim, or other interest of the decedent, will not operate to forfeit the right of the heirs to any portion of the estate ; nor need the heirs obtain authority from the probate court, to prosecute for the recovery of an interest in the estate, which they may regard themselves as entitled to.

Extrinsic evidence may properly be resorted to, in order to show the usage of a business, or the use and nature of certain kinds of property, viewed with reference to its application, or the interest to which it may be subservient.

In mineral lands, the surface—the soil, as adapted to cultivation—may be separated from the mineral right, or the right to dig under the surface for ore; and it is consistent with the nature and adaptation of the property, that one should hold one of these rights, whilst another person is interested in the other.

Stewart et al. v. Chadwick et al.

Where W. and C. each claimed a "claim" right in mineral land, and C. and the administrator of W., entered into an agreement, by which the said C. agreed to give to the said W's estate, one-sixth part of all mineral raised upon the land; that he would enter the land from the United States, and was to receive the surface, or soil, of said property: that if he worked the ground, he would pay to said estate one-sixth of the mineral; and that if the estate worked or discovered any mineral, it was to have the privilege to do so, without paying any part to any person; *Held*, 1. That C. was to hold the soil, or surface—the agricultural use of the land—and that the estate or heirs of W. held the mineral right; 2. That C., when he caused the land to be entered, held the mineral right in trust for the heirs of W.

A trustee does not possess the right to continue to hold the trust interest in himself, unless it is so provided in the creation of the trust; and a conveyance of it to the *cestui que trust*, may be enforced by a court of equity.

A purchaser of real estate, with notice that his grantor holds the title as trustee, stands in the place of the grantor, and is chargeable with the trust.

A grantor of real estate, who conveys by deed of general warranty, is a competent witness for the complainant, in an action against his grantee, to show that the grantor conveyed, by mistake, a greater interest in the land than he possessed, and to enforce the trust against the grantee. In such a case, he is called to testify against his interest.

Evidence to impeach a witness, is not admissible, where the party has laid no foundation for the impeachment, in his examination of the witness.

The knowledge of the interests of an estate, which an administrator obtains in the discharge of his duties, is competent to establish the fact that there was such a claim, or such a demand, belonging to or set up by the estate, though it may not be sufficient to fix its original truth or validity, and is not hearsay evidence.

Where an agreement has been made in good faith, with the express intention of settling prior disputes, the parties cannot go behind it; and a purchaser from one of the parties, with notice of the contract, takes subject to the settlement.

A widow has no estate, as such, in an interest in real estate held in trust by another, for her husband. Upon the death of the husband, the right descends to his heirs at law, and when they have recovered the estate, she makes her claim of dower against them.

*Appeal from the Dubuque District Court.*

THURSDAY, JUNE 9.

THIS bill in equity was filed by Joseph and Ann Wilson, children and heirs of Abraham Wilson, deceased, and minors, suing by W. G. Stewart, and Jesse P. Farley, their guardians; and William G. Stewart, with Caroline, his wife, who was the widow of the said Abraham Wilson, to enforce the conveyance of a certain interest in mineral lot number 148, in the county of Dubuque, &c.

Prior to the year 1846, Abraham Wilson died possessed of a " claim," according to the custom of the country, in a tract of land, which was afterwards known as mineral lot number 148, and was also otherwise described. On the 12th of October, 1846, Heman Chadwick entered into an agreement with Robert Waller, as administrator on the estate of Abraham Wilson, to the effect, that " the said Chadwick agrees to give to said Wilson's estate, one-sixth part of all mineral that may be raised on a certain piece of mineral ground, containing six acres, more or less, (describing it as bounded by adjacent owners). The said Chadwick agrees to enter said described property from the United States, and said Chadwick has to receive the surface, or soil of said property. If said Chadwick works said ground, he will pay one-sixth of mineral to Wilson's estate, as above described; or if the administrator works or discovers any mineral, the estate is to have the privilege to do so, without paying any part to any person whatsoever." The agreement concludes as follows: " This day settled as a claim formerly in dispute, but this day settled between us, said parties."

The bill alleges that Chadwick caused the land to be "entered," at the land office, by G. L. Nightengale; and on the 30th of April, 1848, took a deed of the whole to himself, without reserving the mineral right to the heirs of Wilson; and that on the 26th of June, 1850, Chadwick conveyed the entire land and interest to the defendant, Collins. It is further averred that the conveyance of the whole to Collins, without reserving the interest of Wilson's heirs, occurred through mistake, which petitioners pray may be reformed and corrected in this respect. The bill also charges

VOL. VIII.—59

that Collins had notice, and full knowledge, of the interest of the said Abraham Wilson, and of his heirs, at the time of the conveyance to him, and that he took his deed under cognizance of that interest.   The petitioners then pray that the title to the mineral right in the said lot may be declared to be vested in them ; that the deed from Chadwick to Collins may be reformed and modified, so as to conform to the agreement and intention of the said parties; and that the respondents be required to convey the said mineral right to the petitioners.

Collins demurred to the bill, and answered, denying notice, &c., and the cause was heard upon petition, answer, and evidence.   The decree of the court was entered in favor of the complainants, from which the respondents appeal.

*D. S. Wilson*, for the appellant, in his argument, cited the following authorities :   *Towne* v. *Smith*, 1 W. & M., 115 ; *Hough* v. *Richardson*, 3 Story, 659 ; *Morgan* v. *Tipton*, 4 McLean, 339 ; 8 Smedes & M., 681 ; Willard's Eq., 261, 297 ; 1 Maddock, Ch., 36, 425 ; *Storr and others*, 7 Conn., 214 ; *McKennan* v. *Doughman*, 1 Penn., 417 ; *Gregory* v. *Griffin*, 1 Barr., 212 ; 1 Stark. Ev., 113 ; 2 Ib., 305 ; *Rummington* v. *Kelley*, 7 Ohio, 437 ; 3 McLean, 82 ; *Jugar* v. *Toulmin*, 9 Ala., 662 ; *Cunningham* v. *Fithian*, 2 Gilm., 650 ; *Gould* v. *Gould*, 3 Story, 617; *Grand Gulf R. R. Co.* v. *Bryan*, 8 Smedes & M., 234 : *Ferson* v. *Langer*, 4 Wood. & M., 148 ; *Evans* v. *Spurgier*, 11 Grat. 615 ; *Norway* v. *Rowe*, 19 Vesey ; *Hine* v. *Dodd*, 2 Atk., 275 ; *Norcoss* v. *Widgery*, 2 Mass., 504; 4 Pick., 253 ; 15 Mass., 253 ; 8 Johns., 137.

*W. T. Barker*, for the appellees.

WOODWARD, J.—The respondent, Collins, demurred to the bill, and the causes assigned will be noticed, without a formal statement of them.   That the contract with Chadwick was made by Waller, as administrator of the estate, and not by the complainants themselves, is not a controlling

objection.  The minor heirs are the real parties in interest;
and a contract by the administrator, relating to the estate,
such as he had authority to make, would enure to their ben-
efit, after it should be ascertained that it was not required
for the creditors.  We are not aware that it has been de-
termined whether those possessory rights, termed "claims,"
are real or personal estate.  Contracts in relation to im-
provements upon them have been recognised, and the inter-
est in them has been regarded as a possessory one ; and be-
ing possessory only, they could not take rank above estates
for years, which go to the administrator.  For this reason,
a contract concerning an interest in them, must be regarded
as relating to the personalty, and therefore as pertaining to
the administrator.  And this may become still more clearly
true, when the contract is made with the administrator.
The early statutes do not imply that these interests were
realty.  The earliest were those of Michigan and Wiscon-
sin, extended over this territory, which had reference to a
state of things existing then, primarily ; and when our own
first acts were passed, recognizing real estate, there was such
property here, as there were sales by the United States in
1838 and 1840.  Besides, all these were in anticipation of
a condition of things, which was as sure to arise as that
population would take possession of the land, so that it is
entirely unnecessary to adopt the forced construction that
these laws, in assuming the existence of real estate, recog-
nized possessory " claims " as such.  See *Bowman* v. *Torr*,
5 Iowa, 571.  As personal property, then, the administra-
tor had rights in connection with it; and as a right, or an
interest, whether real or personal, it would descend to the
heirs.

No difficulty exists, in reference to the description.  The
tract is described in different modes in the agreement and
the petition, and perhaps in the deeds; but they are shown
to be the same parcel.  At the latter dates, the numbers
took the place of other and more detailed description.

With reference to certain other causes of demurrer, we

remark, that it is not essential, under any rule of law, that the petition should show the ages of minor heirs. And the omission to inventory a claim, or other interest, does not operate to forfeit the right of the heirs, in any portion of the estate. The respondent fails to refer us to any provision of law, requiring the heirs to obtain authority from the probate court to prosecute for the recovery of an interest, which they may regard themselves as entitled to. Positions so unfounded as these, are noticed only as an indication that they have been listened to, and not because of any merit requiring attention.

There is more force in the exception, that the agreement does not bind Chadwick to convey to Waller, the administrator, or to any other person, any interest in the land mentioned. Whatever the intent of the agreement, it is not clearly manifested. It contains provisions, or expressions, tending to either one of two or three constructions : as whether the intent was to give a permanent and substantial interest to the estate, or a usufruct ; or whether to give one of these to Chadwick. Extrinsic evidence is properly resorted to, in order to learn the usages of a business, or the use and nature of certain kinds of property, viewed with reference to its application, or the interest to which it may be subservient. It was so done in this case; and from the testimony, we learn, that notwithstanding the general truth of the maxim, *cujus est solum ejus est ad coelum*, and that he who owns the surface, also owns the centre ; yet in mineral lands the surface—the soil as adapted to cultivation—may be separated from the mineral right, or the right to dig under the surface for ore. We perceive that it is consistent with the nature and adaptation of the property, that one person should hold the one of these rights, whilst another person is interested in the other.

Under the above explanation of the different uses of mineral lands, we are permitted to conceive, that the contracting parties may have intended thus to divide the use or interests in the land in controversy. There had been a differ-

ence in relation to the tract; and the parties, in their contract, say in relation to it, "this day settled as a claim formerly in dispute, but this day settled between us, said parties." It presents some difficulty that the contract indicates a possible right in Chadwick to dig mineral, in providing that if he worked it, he should pay one-sixth to the estate. But, on the other hand, this rentage implies the relation of landlord—of ownership in the estate; and this idea is much strengthened by the provision, that if the administrator (or the estate), work, or discover mineral, they do it " without paying any part to any person whatsoever." This clearly indicates the superior right, and the first right of choice, whether to work the mineral or not. One other provision settles the rights of the parties. Chadwick is to enter the property from the United States, and he "has to receive the surface, or soil, of said property." The testimony before referred to, shows how the interest in the surface may be separated from the entire interest, or fee. It is clear, that Chadwick was to hold the soil, or surface, the agricultural use of the land; and the estate, or heirs of Wilson, the mineral right. This was the division made to settle the controversy in relation to the claim. The next question which occurs, is: what was to be the condition of Wilson's right and interest? If Chadwick held the title, he would evidently hold the mineral right, in trust for those representing Abraham Wilson. But a trustee does not possess the right to continue to hold the trust-interest in himself, unless this is so provided in the creation of the trust. A conveyance of it to the *cestui que trust*, may be enforced by a court of equity. This is the condition of the right between Chadwick and the heirs and administrator of Wilson. Chadwick, however, has conveyed to Collins, without reserving the interest of Wilson, in terms. Yet if Collins has taken, with a knowledge of the trust, or of the interest in Wilson, he is chargeable with the trust, and stands in Chadwick's place.

The court did not err, then, in overruling the demurrer,

and we come to the next question, which is, whether Collins had the notice above named. And it is our opinion, that he had. The testimony of Chadwick is clear and definite on this point. It relates to the time of making the contract to sell to Collins. And the testimony of O'Brien confirms that of Chadwick, showing that Collins did not claim to own the entire interest in the land, but the surface only; and this very claim of the soil alone, concurs with the supposed interest of Chadwick, and which he should have sold to Collins. Again: Waller's statement that Chadwick told him that he had conveyed only the surface, coincides with Chadwick's, that he informed Collins. It is true that it was not correct—that is, that his deed did carry more; but this declaration apparently indicates his intentions, and may have expressed what he then thought he had done.

The present is a suitable occasion to advert to the objections to the testimony. The defendant will perceive that his exceptions go to the extent of saying, that the testimony of no one of four witnesses is to be received, although none of them is impeached in respect to his character, reputation, or standing. It is true that there are some incongruities; but it is to be remembered, that the witnesses testify in respect to transactions running back several years—some of them reaching even to eighteen or twenty years; and that the principal inconsistencies relate to dates, and those not of material importance in the case. On the other hand, in the important facts, the witnesses support each other—circumstances concur—and the written instruments, which do not deceive, also lend their support. Thus, for instance, the agreement between Waller and Chadwick, gives support to the testimony of those witnesses, in so far, at least, as it shows that there was a controversy concerning the claim, and that that was designed as a settlement of it. And similar remarks might be made relative to other portions of the case.

Again, some of the testimony, if measured by strict rules,

was not admissible, but no objection was made at the time, so that the fault of question or answer might be corrected; and besides, both parties pursued a similar course, and seem to have aimed at obtaining all the facts, rather than the strict observance of rules.

The objection to Chadwick, as arising from interest, is not well founded. In testifying for the complainants, he is acting against his interest. Having given a warranty deed to Collins, covering the entire estate in fee, his interest would lead him to support that conveyance in its full extent. His testimony in relation to the manner in which Nightengale should have obtained the description of the land, does not necessarily indicate anything worse than carelesness; and that concerning the commissioner, goes no further than to manifest vagueness and looseness of idea in reference to them and their duties. The exceptionable features of his testimony on these subjects, and in reference to the reading of the deed, are susceptible of some extenuation from the circumstance of his illness and suffering, at the time, in consequence of an injury received in the overturning of a coach. The testimony of Smith is intended to impeach Chadwick, and being objected to, is not admissible, the party having laid no foundation in his examination of the latter.

But further, suppose Chadwick did intend to convey the whole fee to Collins, and was false in saying that he had not, or did not intend to, what effect has this upon the case? If he was chargeable as with a trust, and Collins knew it, his intent to deceive either the one or the other, is of no avail in the present inquiry.

We cannot participate with counsel, in their astonishment or incredibility, as to the testimony of Leemon. He says that the signature to the agreement is his, but that he has no recollection of the transaction—not even of putting his name to it—and he remembers nothing, and knows nothing about it, except that the signature is his. This is

not remarkable.    Twelve years before he testified, he put his hand, as a witness, to an instrument in a transaction in which he had no concern, and it is far from incredible that he should recollect nothing, and should know nothing about it, save that his signature is set to it.

The objection to Waller's testimony, in relation to Wilson's claim in the land—that it is hearsay, is urged without proper consideration.  It is not hearsay, although his knowledge was not original and direct.    He came into connection with the estate as administrator, and the knowledge he obtains of the interests of the estate, in the discharge of the duties of such a place, may be termed official, in some sense or degree, and, however obtained, is competent to establish the fact that there was such a claim, or such a demand, belonging to, or set up by the estate, though it may not be sufficient to fix its original truth and validity.   We speak now of the degree, or kind of his knowledge, and not of his competency as a witness.

The disposition of the demurrer, and the above remarks upon the construction of the agreement, embrace the most important questions of the cause, but yet there are some others which demand attention.

The agreement having been made with the express intent of settling prior disputes, the defendant cannot go behind it, as in some respects he seeks to do.    Those taking under Chadwick, with notice of the contract, take subject to that settlement.    If Sleator and Chadwick permitted the claim to become forfeit, by non-user, they holding lease under Waller, could not set up such forfeiture against him, and obtain a new right as opposed to him, by virtue of the forfeiture.    They could not derive a benefit from a forfeiture, created by their own act.    But, even if this were not so, the agreement, made subsequently, shuts off that question. Whether viewed in relation to this, or any other position, Chadwick cannot controvert the interest of Wilson's heirs, nor can one holding under him, with notice.

The respondent claims the benefit of new matter set up

in his answer, and to which there is no replication. He points out no facts, the benefit of which he asks, and we are unable to perceive anything of importance, or which would aid his cause, which is not embraced in the bill, and in the answer responsive.

Neither is the cause one which should be classed as a stale demand. Regarding its age alone, we should hardly be justified in so treating it, and it is shown that the administrator repeatedly called upon Chadwick for a deed, which he as often promised; and this request was made even after his discharge, which would bring it as late as the year 1851 or 1852. This was at the request of the guardians.

Then, it is to be borne in mind, that the petitioners are still minors, and the court can see nothing to justify it in setting the cause down as one upon a stale demand. This is remarked, without considering whether a claim to real estate, or to an interest in it, as this became upon the purchase of the title, can be treated as such.

The foregoing remarks are believed to touch all the important questions made in the cause. We have arrived at the conclusion that Chadwick held an interest in the land, as trustee for Wilson and his heirs; that when Collins purchased he had knowledge of this interest; that it descended to the heirs of Wilson; that they had no occasion to go to the probate court, for leave to prosecute this right; that it was not lost, though the administrator omitted to cause it to be entered in the inventory, and returned to the probate court; and, finally, that Collins is, in equity, bound to convey this interest to the petitioners, Joseph and Ann Wilson. The widow of Abraham Wilson has no estate, as such, for which she can sue at present, as in this case. The right descends upon the heirs at law, and when they have recovered, she makes her claim of dower upon them. This suit is not to settle a right to dower, but to determine the right or title between Collins on the one hand, and the estate of Wilson, represented by his heirs, on the other.

The decree of the district court is affirmed.