G. B. JENSEN, Appellee, v. LEWIS SHEKER et al., Appellants.

No. 45754.

DECEMBER 9, 1941.

Helsell, Burnquist & Bradshaw and Havner, Flick & Powers, for appellee.

D. M. Kelleher, for appellants.

STIGER, J.—On February 7, 1890, Edward H. Litchfield conveyed 480 acres situated in Webster County, Iowa, to Wesley Sheker. The deed contained the following reservation:

"Reserving to the said Edward H. Litchfield, his heirs and assigns, all coal, coal mines, minerals, mineral products, oil and gypsum with the full and sole right to prospect for, mine obtain and remove the same by such means as he may deem proper, without hereby incurring in any event whatever any liability or injury caused or damage done to the surface of said land except that the said Edward H. Litchfield his heirs or assigns shall pay the owners of said premises at the rate of $25, per acre for any surface land necessary to be used aside from said right of way in working such coal, coal mines, minerals, mineral products, oil and gypsum and removing the same."

On February 20, 1894, Wesley Sheker conveyed 120 acres of said land to defendant Anthony Sheker who had personal knowledge of the exception or reservation contained in the deed from Litchfield to his grantor.

On January 28, 1924, Edward H. Litchfield conveyed all mineral rights reserved by him as grantor in various deeds to

lands in several counties—including the deed to Wesley Sheker —to his four children subject to any modifications made by him of the terms of the reservation "which may be made of record in any county."

On December 10, 1924, the said children of Edward Litchfield conveyed the mineral rights excepted from the grant to the Litchfield Realty Company.

Sometime prior to July 22, 1940, plaintiff, G. B. Jensen, became, through mesne conveyances, the owner of a coal lease, which included the land owned by defendant, executed by the Litchfield Realty Company to the Beck Coal and Mining Company. This lease contained the following provisions:

"That in consideration of the rents and covenants on the part of the lessee to be by it paid and performed, the said lessor hereby leases to lessee all and every right to mine and remove merchantable coal that is in or may underlie the surface of the premises hereinafter mentioned, reserved by and set forth in certain mineral reservations now held by lessor, as recited and contained in deeds now of record embracing said lands."

On July 22, 1940, plaintiff and the Litchfield Realty Company entered into an agreement called a modification and supplement to the coal lease between the realty company and the Beck Coal and Mining Company. This contract conceded that Jensen was the owner of the lease and provided that the "lessor [the Litchfield Realty Company] hereby assigns and transfers to lessee all rights now possessed by lessor pertaining to the lands and coal rights covered by this lease, as to the development, mining and removal of the coal referred to in this lease, but it is expressly agreed between the parties hereto that this assignment does not constitute a conveyance of the coal embraced in this lease owned by lessor."

The supplemental lease provided for payment of rent or royalties to the lessor. After plaintiff, as lessee, had started drilling or prospecting on defendant's land, he, the defendant, ordered plaintiff to vacate his premises and refused to permit him to continue drilling or prepare for the mining and removal of the coal underlying the premises. Plaintiff then commenced this suit.

We quote paragraph 8 of plaintiff's petition:

"8. This plaintiff further states that he is ready, willing and able to pay the owners of said premises at the rate of $25 per acre for any surface used, aside from the right of way, in working such coal and coal mine, as is provided in the reservation in said deed, and the plaintiff hereby tenders and agrees to pay to the defendants as soon as it can be determined the rate of damages provided in said reservation, and this plaintiff alleges that he is not only ready, but able and willing to make such payment as soon as it can be determined as a result of said prospecting the amount of surface of said premises, if any, which are necessary to be taken to be used, aside from right of way, in the working and removal of the coal in connection with the coal mine which may be established on said land."

The answer alleged that plaintiff was not entitled to require the surrender of the surface land by defendant to him; that plaintiff was not possessed of an estate in said land which entitled him to enforce his pretended rights; that Edward H. Litchfield modified the original reservation of the mineral rights by requiring payment of $300 per acre for any surface land necessary to be used in mining operations and that plaintiff did not have any right to enter upon or take over his surface lands necessary to be used without first compensating him to the extent of $300 per acre; that plaintiff was obligated to pay for surface land at the rate of $300 per acre before demanding surrender of any possession thereof by defendant. The answer plead adverse possession, estoppel and denies that plaintiff is:

"* * * under the facts and circumstances herein in this answer set forth, entitled in a court of equity to in any manner supersede the possession of the owner or his tenant as to any part of said lands without defining and describing the part sought to be taken and appropriated, and in advance of exercising or asserting any right of possession, entry or control thereof advancing and paying the full sum of Three Hundred Dollars per acre for the part so described."

The decree enjoined defendant "from in anywise interfering with the plaintiff, his heirs, successors and assigns, in

prospecting for, mining, obtaining and removing the coal underlying the surface of [real estate described] and from interfering with the plaintiff in establishing a right-of-way to said coal.

"It Is Further Ordered, Adjudged and Decreed that the plaintiff may go upon the above described premises to prospect for coal thereon and to mine and remove the coal underlying the surface by such means as he may deem proper, the same as the Litchfield Company could do, if said Company had not executed the lease to the plaintiff in this action, but had retained all rights under the mineral reservation, as set forth and described under the Findings, Ruling and Order hereinbefore referred to; and the defendants, and each of them, are hereby enjoined from interfering with the plaintiff exercising such rights." Anthony Sheker will be referred to as defendant.

■ I. There is no merit to the defense that defendant acquired title to the underlying minerals by adverse possession.

The general rule is that where title to the surface estate and the underlying minerals have been severed, the possession of the surface estate does not give title by adverse possession to the mineral estate in the absence of acts of dominion over the minerals. Claybrooke v. Barnes, 180 Ark. 678, 22 S. W. 2d 390, 67 A. L. R. 1436 and Annotation. See Bremhorst v. Phillips Coal Co., 202 Iowa 1251, 211 N. W. 898; Stewart v. Chadwick, 8 Iowa 463.

Defendant testified that he had known of the reserved mineral rights from the time his father, Wesley Sheker, purchased the land and had never claimed ownership of the minerals.

■ II. Defendant contends the court erred in permitting the plaintiff to go upon his premises to prospect for coal and to mine and remove the coal underlying the surface by such means as he might deem proper.

Defendant states that he owns the surface estate and the Litchfield Realty Company owns the underlying minerals and that the subsurface estate owes a servitude of affording sufficient support to sustain his surface estate; that the owner of the surface has an absolute right to necessary support. He has correctly stated an abstract principle of law. But the right of the

parties to contract with reference to subjacent support is recognized by the court in Collins v. Gleason Coal Co., 140 Iowa 114, 118, 115 N. W. 497, 498, 18 L. R. A., N. S., 736. The court stated:

"The great weight of authority, both English and American, undoubtedly supports the rule that, where the ownership of the surface of the land has been severed from the ownership of the minerals under it, *unless the matter has been otherwise determined by contract or conveyance,* the owner of the surface has an absolute right to necessary support for his land." (Italics supplied.)

The respective rights of the parties must be determined primarily by the instrument which severed the title to the surface estate and underlying minerals. The deed from Edward H. Litchfield to Wesley Sheker reserved to the grantor and his heirs or assigns all coal, coal mines, etc., beneath the surface of the premises and a right of way thereto "with the full and sole right to prospect for, mine obtain and remove the same by such means as he may deem proper, without hereby incurring in any event whatever any liability or injury caused or damage done to the surface of said land except that the said Edward H. Litchfield his heirs or assigns shall pay the owners of said premises at the rate of $25, per acre for any surface land necessary to be used aside from said right of way in working such coal, coal mines, minerals, mineral products, oil and gypsum and removing the same."

The Litchfield Realty Company became the owner of all the mineral rights of Edward H. Litchfield under the exception. Plaintiff, as assignee of the original lease, as supplemented, acquired the right to mine and remove merchantable coal underlying the premises, the company retaining title to the coal, and the easement right to use surface land necessary to his mining operations upon payment of the stipulated damages for its use or injuries thereto. The supplemental lease provided:

"9. It is further agreed that lessor and lessee shall share equally in the cost of acquisition of the surface rights up to and including five (5) acres of land embraced in this lease."

The deed expressly provided for liquidated damages for any injuries to the surface estate.

The right of the surface owner to subjacent support was waived by the terms of the exception. As stated in 36 Am. Jur. 408:

"The waiver of surface support may be inferred from the terms of the grant or reservation of the minerals, as where it contains an agreement to pay for damages to the surface."

The trial court was right in restraining defendant from interfering with plaintiff's right to prospect for, mine and remove coal underlying defendant's surface estate. The decree recognized defendant's right to damages when injuries to his surface estate are sustained.

Defendant, throughout his argument, repeatedly refers to his proposition that plaintiff should have been required to pay him for his surface land necessary to be used for mining purposes at the rate of $300 per acre as a condition precedent to entering upon his premises and commencing mining operations.

In support of this contention defendant advances several theories. He claims the rights reserved in the original deed were only rights to repurchase the surface estate, the reservation of an option to pay for land at a stipulated price; that under the guise of an injunction, plaintiff, in truth, is seeking a decree of specific performance or is exercising his option to purchase; that under the terms of the decree plaintiff has reacquired what had been granted by Edward H. Litchfield without the necessity of paying the price fixed in the option to repurchase; that because the word "reservation" is used the subsurface estate was not "excepted" from the grant by Litchfield to Wesley Sheker. We are not in accord with defendant's views.

While there is a technical distinction between an exception and a reservation—an exception withdraws from the operation of a deed a part of the thing granted which would otherwise pass, while, by a reservation, the grantor reserves some new thing to himself out of the thing granted—it is very generally recognized that the terms are often used interchangeably and the technical meaning will yield to the manifest intent of the parties. 40 C. J. 971; 18 C. J. 341. As stated in McCoy v.

Chicago, M. & St. P. R. Co., 176 Iowa 139, 155 N. W. 995, "exception" and "reservation" are frequently treated and construed as interchangeable or equivalent terms.

The original deed did not convey the entire estate of the grantor in the land reserving to him only an option to repurchase. It conveyed the surface estate and excepted from the grant the mineral estate, the result being a complete severance of the mineral estate from the surface estate and the creation of separate, independent estates, the grantor retaining a freehold mineral estate. In re Appeal of Colby, 184 Iowa 1104, 169 N. W. 443. The deed excepted the mineral estate from its operation, and the right to prospect for, mine and remove coal, the right to carry on the business of mining, without liability other than the obligation to respond in damages when the right to damages accrues, that is, when the surface of the land is used or injured, is appurtenant to the mineral estate.

Plaintiff is not seeking specific performance of some obligation of defendant to him. He brought this suit to protect his right to prospect for coal and to mine the underlying coal without interference by defendant. He is not obliged to pay damages until he causes damages to defendant. It does not appear that, to date, there have been any injuries to the surface land through mining operations by the plaintiff who has not yet had an opportunity to prospect and find out whether there is sufficient marketable coal to justify mining operations. Defendant's right to damages will accrue when injuries to his surface land are sustained. Defendant's statement that, under the terms of the decree, plaintiff has reacquired his surface estate without the payment of compensation is inaccurate. The trial court accurately disposed of the question of recovery of damages by defendant in the following language:

"In going upon said premises to prospect for and remove coal therefrom, the plaintiff will be liable in damages to the present owner of said land and to the tenant thereon in accordance with their respective interests, all as provided in the mineral reserve, Exhibit 1. Liability, however, for such damages can not be claimed or paid until they arise."

The decree further stated on this subject:

"In order to clarify the question that has arisen as to the question of damages recoverable by defendants, or either of them, in case of entry by the plaintiff, his successors, or assigns upon said land, if damages result therefrom, the ruling and this decree with respect thereto is as follows:

"This decree is not to be deemed as an adjudication of that question, or as affecting or in any way foreclosing the right of the defendants, or either of them, to claim and maintain suit for the recovery of any damages, if any arise, through the entry by the plaintiff, his successors, or assigns, upon said land, either on the surface or through underground entries and runs for the purpose of prospecting, excavating and removing coal from said premises, but the question both as to the right to recover and the measure of such damages is reserved for future determination by the Court wherein suit is begun, and that issue is tried."

Nor can we sustain defendant's plea that he has been in possession of his surface estate for 45 years; that the owners of the mineral rights and their lessees stood by while he erected valuable improvements on the farm and increased its value during said period from $10 to $150 per acre without asserting any of the rights which are now asserted by the plaintiff and that by reason thereof plaintiff and all persons under whom he claims to exercise this alleged right are estopped by their conduct and are guilty of laches and are not entitled in a court of equity to assert the existence of the alleged estate or interest in his land now claimed in plaintiff's petition.

The answer to this plea is that the title to the mineral estate is a fee simple title and the owner's dominion over this estate is as absolute as defendant's dominion over his estate subject only to servitudes not involved in this case. Defendant purchased his farm with the constructive and actual knowledge that all or any part of his surface estate might be taken and used for mining purposes upon payment of the stipulated damages whenever the owner of the mineral estate elected to work the mines. Such surface rights were expressly reserved to the owner of the mineral rights.

We quote from 40 C. J. 983, section 570:

"Where the grantee of mineral rights is given the right to use as much of the land as he deems necessary or convenient to his business, he may, where it is necessary or convenient to do so, use and occupy the whole surface of the land, even to excluding the surface owner and taking his house and garden by making compensation therefor." Citing McIntire v. Marian Coal Co., 190 Ky. 342, 227 S. W. 298.

III. Another proposition is that the Litchfield Realty Company was owner of the coal and the right to mine and remove the coal was an incident of the estate of the owner and cannot be separated as another estate or interest in the land; that plaintiff had no interest or right in the land that will be enforced in a court of equity and that the Litchfield Realty Company is the proper party plaintiff or at least an indispensable party. This proposition cannot be sustained.

The Litchfield Realty Company, owner of the mineral estate, had the right to mine and remove its coal and the right to use any or all of the surface land necessary to the business of mining. This right was transferred to plaintiff by the lease and supplement and he is entitled to have this property right protected in a court of equity.

In Goldfield Consolidated Mines Co. v. Goldfield Miners' Union, 9 Cir., Nev., 159 F. 500, the court states at page 512:

"The right to operate a mine and carry on the business of mining therein is property, whether the operator owns the mine or not. It is a right as distinct and real as the ownership of the fee itself. If complainant has such right, it has the further right to enjoy such property, and to operate the mines free from unlawful molestation and interference, and it naturally follows that the power of a court of equity may be invoked to protect such right, even though the operator may not own the mine, or even a share of stock in the company which does own the mine."

That a mining lease creates a property interest in the land, see 36 Am. Jur. 309, 312; Hook v. Garfield Coal Co., 112 Iowa 210, 83 N. W. 963.

On the question of the right of a tenant who is entitled to use an easement of his lessor to enjoin anyone who interferes

with such use, the court, in Johnson v. Robertson, 156 Iowa 64, 81, 135 N. W. 585, 592, Ann. Cas. 1915B, 137, said:

"From these decisions it will be observed that these building restrictions or agreements, particularly where negative in character, create equitable easements, amenities, or servitudes, and that they may be enforced by any one interested in the property without regard to privity either of contract or estate and no matter whether the covenant may be said to run with the land or not. It follows, then, that a tenant who is entitled to use this easement may bring a suit in equity to enjoin any one who is threatening to interfere with that use."

IV. Defendant claims the trial court erred in not compelling the plaintiff to pay defendant $300 per acre before permitting him to enter upon the defendant's land or interfere with the possession of his estate. This assignment of error is in reference to a written agreement dated February 6, 1922, between Edward H. Litchfield and Wesley Sheker, grantor and grantee in the original deed, which modified the reservation in the deed by substituting the sum of $300 per acre for the sum of $25 per acre. Plaintiff takes the position the agreement increasing the price to be paid per acre for land used in mining operations refers only to the land described therein, while the defendant contends the modification refers to all of the 480 acres conveyed by the original deed. The trial court, because of his finding that defendant was not entitled to damages in this suit, did not pass on this question.

Because we have affirmed the finding of the trial court, it is unnecessary for us to pass on this issue.

V. Defendant complains that the court overruled his objection to various deeds offered by plaintiff on the ground that a certificate of authenticity was not attached to the certificates of acknowledgment under the provisions of section 10089. Sections 10086–10090, inclusive, refer to acknowledgments of deeds outside the state. The acknowledgments of the deeds in question were before a notary public as provided by section 10086. The provisions of section 10089 requiring a certificate of authenticity to be attached to certificates of acknowledgment

are not applicable to an acknowledgment before a notary public under the provisions of section 10086.—Affirmed.

MILLER, C. J., and SAGER, GARFIELD, OLIVER, HALE, BLISS, and WENNERSTRUM, JJ., concur.