ANTHONY SHEKER et al., appellees, v. G. B. JENSEN et al., appellants.

No. 47580.

(Reported in 41 N.W. 2d 679)

584

MARCH 7, 1950.

Havner & Powers, of Des Moines, and Helsell, Burnquist & Bradshaw, of Fort Dodge, for appellants.

Kelleher & Kelleher, of Fort Dodge, for appellees.

HAYS, J.—This is a law action for damages to plaintiff's land on account of the subsiding of the surface due to the removal of coal thereunder. The petition is in two counts. Count one

alleges that the defendants appropriated to their use approximately fifty acres of the surface (being the extent of the subsiding), for which damages are asked in accordance with a certain contractual agreement. Count two alleges negligence in the operation of the mine, thereby causing damage to plaintiff's land, crops, tiling, etc. Defendants' answer denies negligence and further alleges that under the agreement in question, damages to the land due to the removal of the coal had been waived. The case was submitted to the jury on the question of negligence, with a verdict in favor of plaintiff. Defendants' motion for a judgment notwithstanding the verdict was overruled, while their motion for a new trial was sustained and a new trial ordered. Both parties have appealed, prior permission having been obtained from this court.

I. We will first consider defendants' appeal. But one proposition is urged. It is: "The reservation contained in the contract and deed made by the Litchfields to Wesley Sheker constituted a valid contract and was an absolute [waiver and] bar to any recovery of damages for surface subsidence, and the court was in error in failing * * * to render judgment in favor of the defendants notwithstanding the verdict."

The issue thus raised is a legal one, based upon the construction to be placed upon the following agreement and conveyances.

In 1890, Edward H. Litchfield conveyed four hundred eighty acres of land in Webster County, Iowa, to Wesley Sheker. The deed contained the following reservation:

"Reserving to the said Edward H. Litchfield, his heirs and assigns, all coal, coal mines * * * with full and sole right to * * * remove the same by such means as he may deem proper, without hereby incurring in any event whatever any liability for injury caused or damage done to the surface of said land except that the said Edward H. Litchfield his heirs or assigns shall pay the owners of said premises at the rate of $25 per acre for any surface land necessary to be used aside from said right of way in working such coal * * * and removing the same."

In 1894, Wesley Sheker conveyed one hundred twenty acres of said land to plaintiff Anthony Sheker, who had full knowledge of the exception in the deed from Litchfield.

By various conveyances the interest of Edward H. Litchfield, under said reservation, was, in 1924, lodged in the Litchfield Realty Company. Thereafter, by a series of transfers, the defendants became the owner of a coal lease on said land. The lease stated: "* * * lessor hereby leases to lessee all and every right to mine and remove merchantable coal that is in or may underlie the surface of the premises * * * reserved by and set forth in certain mineral reservations now held by lessor * * *." By a later agreement it was stated that "* * * this assignment [lease] does not constitute a conveyance of the coal embraced in this lease by lessor." Defendants have removed coal from this land, thereby causing the surface to subside, and this action is for damages on account thereof.

The defendants contend that under the reservation, above set forth, they were free to remove coal irrespective of the effect on the surface without being answerable in damages therefor. The trial court in passing on this question found "* * * that the wording of the reservation was not such as to operate as a waiver or release of liability by the surface owner for loss of subjacent support due to negligence", citing Livingston v. Moingona Coal Co., 49 Iowa 369, 31 Am. Rep. 150, Collins v. Gleason Coal Co., 140 Iowa 114, 115 N.W. 497, 18 L. R. A., N. S., 736, and Jensen v. Sheker, 231 Iowa 240, 1 N.W.2d 262.

In Jensen v. Sheker, supra, this court had before it the conveyance and reservation now under examination. In that action Jensen, defendant herein, sought and obtained an injunction against Sheker, plaintiff herein, enjoining him from interfering with Jensen's entering upon the land for the purpose of prospecting for, or the removal of, coal underlying the Sheker premises. The defendant contended that before the plaintiff was entitled to enter upon the premises and in any manner supersede the possession of the defendant, payment must be made in accordance with the reservation agreement of so much per acre. We there held that while the reservation constituted a waiver of an absolute right of the surface owner to subjacent support, it did not waive the right to damages for injury to the surface estate

but that such injury must occur before the liability attaches. While, as contended by defendant herein, this construction of the reservation as to damages may be somewhat dictum, we believe that it is a correct construction to place thereon.

The purpose of construing the reservation is to determine the intent of the parties. Litchfield had sold to Sheker something of value, the surface to four hundred eighty acres of land, for a substantial consideration. If we adopt the construction claimed by the defendants herein we must hold that it was the intention of the parties that while Sheker had paid for an absolute estate in the surface, Litchfield might at any time nullify the same by removal of the coal thereunder. This reservation grants or, rather, reserves the right to remove the coal by whatever means desired. It might well have been by the strip mine method instead of the method adopted and in which case there would have been a necessary destruction of the surface. We are satisfied that under such a situation the only fair construction to be placed on this reservation would be that such destruction would be termed a use, for which compensation would be paid. We are likewise convinced that where the surface is destroyed by the removal of coal thereunder by any other method than strip mining, such surface destruction must be held to be "surface land necessary to be used aside from said right of way, in working such coal * * * and removing the same." We find no merit in defendants' contention that all right to damage to the surface of the land was waived in the reservation, and hold that the trial court did not err in overruling the motion for judgment notwithstanding the verdict.

II. Turning now to plaintiffs' appeal which is from the order granting a new trial on the grounds that there was a quotient verdict. A quotient verdict results when there is an agreement among the jurors to accept as their verdict whatever amount may be reached by adding together the respective amounts allowed by each juror, dividing this total by twelve and returning the amount thus reached. The pivotal factor is *the agreement to be bound by the figure thus obtained, made prior to the ballot.* All parties concede that such a verdict is illegal and must be set aside. See, however, Carter v. Marshall Oil Co., 185 Iowa 416, 170 N.W. 798; Bailey v. Fredericksburg

Produce Assn., 229 Iowa 677, 295 N.W. 122. Whether or not a verdict is "quotient" depends upon the facts in each case.

All twelve jurors were before the court. The record is clear as to the mechanics adopted in reaching a verdict. The first ballot determined that plaintiff should recover. Then followed a general discussion as to the amount. On the next ballot, called a "straw vote", each juror voted his amount; all were added together and divided by twelve. Again a general discussion of amount and then another ballot, addition and division and the amount reached on the same was returned by the jury as their verdict. (There is a dispute as to what the arrangement or agreement was as to the amount thus obtained.) We think a fair statement as to what was done, as reflected by the testimony of all the jurors, except two or three who were not too certain in their statements, is the following testimony of juror Leo Cahill:

"Q. Well, was there any time that the jury said they would be bound by whatever this division was, without further discussion? A. No. Our foreman said when we took this—he said, 'Let's try to make this ballot the last ballot, and if you are all satisfied we will call it our last ballot', and so we all voted then. Then we talked it over quite awhile, and then he asked us, 'was we satisfied?' and we told him, 'yes' and then he wrote it down and in a little bit he took it in to the bailiff."

The trial court in ruling on the motion for a new trial said:

"While the evidence fails to show an express agreement to be bound, certainly that must have been the understanding of the jurors in proceeding as they did. There would be no purpose in taking the trial or 'straw' ballot unless there was a tacit understanding and agreement to be bound by the following ballot; likewise there would be no reason for taking the last ballot after the straw ballot had been taken unless there was a tacit understanding and agreement that the result of the ballot should be the verdict of the jury."

We do not think that this conclusion of the trial court is warranted by the record. It is common knowledge that unliquidated damages are often arrived at by a compromise, and a reading of this record leads us to the conclusion that the method

adopted by the jurors was merely a plan whereby some common ground for discussion might be reached. For instance, the following testimony by jury foreman, Larson:

"Q. [by the court] How did it happen that you took the two ballots instead of just one? A. Well, it was suggested, after we decided that there should be damages allowed; it was suggested that we secretly ballot just to find out how we felt about the whole matter. We didn't know of any other way of doing it as nicely as that."

It is the rule in this state that an agreement of jurors to each vote the amount of damages to be allowed and to divide the sum total by twelve, with no agreement to be bound by the result, followed by further fair and open discussion and the return of the verdict accordingly, does not constitute a quotient verdict. Peak v. Rhyno, 200 Iowa 864, 205 N.W. 515; Kime v. Owens, 191 Iowa 323, 182 N.W. 398; Bailey v. Fredericksburg Produce Assn., 229 Iowa 677, 295 N.W. 122. The instant case is clearly within the above rule. There was no agreement to be bound, and the record shows that after each ballot there was full discussion of the amount thus reached, with full opportunity to object thereto. While we have held that a finding by the trial court on conflicting evidence that a verdict was a quotient verdict, and a new trial thereby granted, will not be disturbed on appeal (Thornton v. Boggs, 213 Iowa 849, 239 N.W. 514), the conflict must be a substantial one. We do not find such a substantial conflict in the record to warrant the finding of the trial court and we therefore hold that the granting of the new trial was error. While other alleged errors are assigned by plaintiffs, it is not necessary that we consider them.

For the reasons above set forth the judgment of the trial court is—Affirmed on defendants' appeal; reversed on plaintiffs' appeal and remanded with direction to reinstate the original verdict and judgment.

BLISS, C. J., and HALE, SMITH, MANTZ, WENNERSTRUM and MULRONEY, JJ., concur.

OLIVER and GARFIELD, JJ., dissent from Division II.