**Forrest RYAN, Appellant,**

v.

**Ralph E. ARNESON and Shirley J. Arneson, Appellees.**

No. 86–1498.

Supreme Court of Iowa.

April 13, 1988.

James U. Mellick, Waukon, for appellant.

James A. Garrett of Jacobson, Bristol, Thomson & Garrett, Waukon, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal presents three primary issues for consideration by this court. First, is a juror competent to testify as to conversations in the jury room concerning a quotient verdict. Second, is the award of punitive damages excessive, and third, is the prevailing party entitled to attorney fees on appeal under Iowa Code section 639.14 (1987).

## I. *Background.*

This is an action concerning the ownership of approximately twenty acres of land and opposing claims of conversion and wrongful attachment.

The disputed property is a very rugged and wooded parcel of land in northeast Iowa. It is common practice in this area not to construct fences along property lines when the terrain is rugged. When fence lines do not match the property lines, livestock belonging to neighboring farmers often travel onto neighboring property. The trial court determined that this type of situation has existed in that general area for decades.

In 1956, Ralph Arneson and his wife, Shirley, acquired title to the property and held it as joint tenants. Forrest Ryan has never owned an interest in the disputed area, however, he does own property adjacent to the disputed area. There is a fence on Arnesons' land which follows the rough terrain of the disputed area. This fence is maintained by the Arnesons. The trial court found that this fence was treated as a barrier rather than a boundary fence.

Ryan's cattle occasionally ventured into the disputed area. In 1984 Ryan allowed his son to harvest six white oak trees from the disputed area. The Arnesons denied knowledge of these trees being cut down. Approximately fifteen years ago, while Ryan and Arneson were discussing a remnant fence in the disputed area, Ryan indicated to Arneson that he had located the boundary of their properties near the legal boundary. Although Ryan testified that he had no knowledge of a legal description of land, or of how sections and quarter sections of land are arranged, the court did not find his testimony credible. The court also found that Ryan participated in the local custom of maintaining fence lines that do not correspond with boundary lines on three locations within a one-half mile of the disputed property.

Prior to commencement of legal action, bad feelings had developed between the parties. Ryan renounced the Arnesons as his neighbors. The Arnesons allowed hunting on their land; Ryan did not. These differing policies have led to several confrontations that culminated in a serious argument in April of 1985 when a hunter used Ryan's land to approach Arnesons' land. The trial court allowed evidence of the dispute to be introduced, including evidence indicating malice on the part of Ryan.

In the summer of 1986, Arneson harvested approximately 150 trees from the disputed area and portions of Arnesons' land that are not in dispute. Ryan filed suit on July 15, 1986, to attach the logs, which he claimed were wrongfully removed from his land. Ryan claimed to have acquired title to the disputed land by acquiescence under Iowa Code section 650.14 (1985) and by adverse possession. Ryan subsequently released the attachment and brought suit claiming title by acquiescence and adverse possession; and claiming treble damages for trespass and conversion for wrongfully removing the trees. Arneson counterclaimed for wrongful attachment of the logs and to quiet title to the disputed area.

This was a bifurcated trial to both the court and the jury. After the court determined the issues concerning the title of the disputed area, the jury would decide the

owner's claim for damages. The court quieted title of the disputed area in the Arnesons. The jury then returned a verdict against Ryan for $120 actual damages and $18,600 punitive damages. The court ordered Ryan to pay $8500 attorney fees and $1047.58 in court costs.

Ryan filed a motion for judgment notwithstanding the verdict and a new trial, and requested a hearing on the issue of jury misconduct. Ryan asserted that the jury's award of punitive damages was a quotient verdict which improperly included certain surveying costs. The motion was supported by the affidavit of juror Janet Palmer. Arnesons resisted this motion and submitted affidavits from seven jurors, including Janet Palmer, denying the use of a quotient verdict. The court rejected Ryan's motion for a judgment notwithstanding the verdict or a new trial and refused to consider the jurors' affidavits because of Iowa Rule of Evidence 606(b). The court awarded the Arnesons an additional $2,976.22 in attorney fees for the post-trial motions.

The Iowa Court of Appeals affirmed the trial court's judgment quieting title in the Arnesons. The court of appeals held that the trial court did not err in admitting evidence that tended to show that Ryan's actions were malicious. The court of appeals concluded that it was error for the district court to refuse to consider the jurors' affidavits and thus did not determine if the punitive damage award was excessive. The court of appeals awarded the Arnesons an additional $1000 of attorney fees and remanded the case.

## II. *Quieting Title.*

The district court quieted title in the Arnesons and found that Ryan had not established title by acquiescence under Iowa Code section 650.15 or by adverse possession. *See I-80 Assoc., Inc. v. Chicago R.I. & Pac. R.R. Co.,* 224 N.W.2d 8, 10 (Iowa 1974). We agree with the trial court's finding and affirm the quieting of title in Arnesons.

## III. *Juror Testimony Concerning Quotient Verdict.*

Ryan claimed that the jurors committed misconduct by using a quotient verdict to arrive at the amount of punitive damages. A quotient verdict is a verdict in which the jurors agree in advance to be bound by the average of the amounts written down by each juror. *See Sheker v. Jensen,* 241 Iowa 583, 587, 41 N.W.2d 679, 681 (1950) ("The pivotal factor is *the agreement to be bound by the figure thus obtained, made prior to the ballot.*"). While it is improper for the jury to agree to be bound by an average, it is not improper for a jury to use an average as an aid in discussion. *See id.; see also Gus Gutfreund & Co. v. Williams,* 172 Iowa 535, 537, 154 N.W. 753, 753 (1915).

Before considering the merits of the claim of jury misconduct, Ryan must offer competent evidence of jury misconduct. Whether statements, affidavits, or testimony of jurors concerning their conduct can be received in evidence has given rise to substantial difference of opinion. Fed.R. Evid. 606(b) advisory committee's note. In *McDonald v. Pless,* 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300, 1302 (1915), the United States Supreme Court held that testimony from jurors concerning a quotient verdict was not admissible. The *McDonald* Court reviewed the policy considerations presented by this issue.

These two conflicting considerations are illustrated in the present case. If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort

to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

■ Iowa case law concerning competency of jurors to testify has developed largely from *Wright v. Illinois & Miss. Tel. Co.*, 20 Iowa 195, 210 (1866). *See generally* Note, *Use of Jurors' Affidavits to Impeach Verdict*, 45 Iowa L. Rev. 649 (1960). In *Wright*, we held that jurors' affidavits concerning a quotient verdict were competent evidence when considering a motion for new trial. The court stated:

> While we do not feel entirely confident of its correctness, nor state it without considerable hesitation, yet we are not without that assurance, which, under the circumstances, justifies us in laying down the following true rule: That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, *which does not essentially inhere in the verdict itself....*

*Id.* (emphasis added); *see also Fuller v. Chicago & N.W. R.R. Co.*, 31 Iowa 211, 213 (1871). Iowa case law has developed primarily as an interpretation of whether a particular matter essentially inheres in the verdict.

An early use of the subjective/objective test to determine if a matter inheres in the verdict appeared in *Griffin v. Harriman*, 74 Iowa 436, 38 N.W. 139, 140 (1888). The court suggested that objective reports of statements made in the jury room were competent evidence, however, subjective reports concerning the influence or effect of those statements were not competent. *Id.* Subsequent cases continued to use an objective/subjective test to determine if jurors' affidavits related matters that essentially inhere in the verdict. *See Harris v. Deere & Co.*, 263 N.W.2d 727, 729–30 (Iowa 1978) (jurors may give evidence of objective facts of what actually transpired in jury room, but not as to what subjectively influenced their decision); *Fischer, Inc. v. Standard Brands, Inc.*, 204 N.W.2d 579, 586 (Iowa 1973) (same); *State v. Jackson*, 195 N.W.2d 687, 690 (Iowa 1972); *State v. Albers*, 174 N.W.2d 649, 656–57 (Iowa 1970).

A new dimension in the determination of whether a juror is competent to testify to statements made in deliberations appeared in *State v. Rouse*, 290 N.W.2d 911, 916 (Iowa 1980). After favorably referring to Federal Rule of Evidence 606(b), we stated that "[a] distinction must be drawn between inquiries into the internal workings of the jury and external pressures brought to bear on the decision-making process." *Id.* The court recognized that testimony of internal workings, such as the deliberations of the jury, were matters that inhere in the verdict and jurors were incompetent to testify to them. *Id.* The court went on, however, to favorably cite the *Harris* case for the proposition that certain "objective" facts may be testified to by a juror. Thus, *Rouse* did not discard the case law concerning the objective/subjective test, but did introduce the consideration of internal/external test as set forth in Federal Rule of Evidence 606(b).

The internal/external test gained recognition in 1983 when Iowa adopted language identical to Federal Rule of Evidence 606(b). The Iowa Rule provides:

> (b) *Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would

be precluded from testifying be received for these purposes.

Iowa R. Evid. 606(b); *cf.* Fed.R.Evid. 606(b).

While adoption of rule 606(b) strengthens the argument for declaring jurors incompetent to testify as to statements made in deliberations, recent cases concerning this issue have demonstrated a certain amount of disharmony. *Compare State v. Christianson,* 337 N.W.2d 502, 504–05 (Iowa 1983) (evidence of discussions of jurors in the jury room inhere in verdict), *with Crowley v. Glessner,* 328 N.W.2d 513, 514 (Iowa 1983) (citing *Rouse* for internal/external test and *Harris* for objective/subjective test) *and State v. Harrington,* 349 N.W.2d 758, 762 (Iowa 1984) (favorably quotes both objective/subjective test and internal/external test); *with State v. Sauls,* 391 N.W.2d 239, 240–41 (Iowa 1986) (objective/subjective test) *and State v. Cullen,* 357 N.W.2d 24, 27 (Iowa 1984) ("evidence from the jurors must consist only of *objective* facts as to what actually occurred *in or out of the jury room* bearing on misconduct") (emphasis added).

Under existing Iowa case law, it is unclear if jurors are competent to testify as to statements made in the jury room which can be classified as objective, or if such testimony reveals the internal workings of the decision-making process and cannot be considered.

Federal lawmakers were faced with a similar conflict when Federal Rule of Evidence 606(b) was adopted. The differences between the Iowa common law and the federal rule are demonstrated in the Report of the House Judiciary Committee. The House committee suggested following Iowa case law by adopting an objective test which would allow testimony of objective statements made in the jury room. *See* Fed.R.Evid. 606(b) report of House Judiciary Committee. The Senate Judiciary Committee proposed a different rule. They proposed to exclude any evidence of the internal deliberations of the jury. Jurors would be competent to testify only to extraneous prejudicial information or outside influence which was brought to bear on the jury. *See* Fed.R.Evid. 606 report of Senate Judiciary Committee. In the end, the House version was rejected and the Senate version was adopted. *See* Fed.R.Evid. 606(b).

We face a similar decision, that being whether to continue to allow juror testimony as to internal deliberations that can be characterized as objective, or to adopt the federal test which considers jurors incompetent to testify to any matter or statements occurring in the course of deliberations, *see Scogin v. Century Fitness, Inc.,* 780 F.2d 1316, 1314–20 (8th Cir.1985). Based on Iowa's adoption of language identical to Federal Rule of Evidence 606(b), and the policy reasons for insulating the manner in which the jury reaches its verdict, we now adopt the federal rule which protects each of the components of deliberation including juror arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process occurring in the jury room. The district court was correct to disregard affidavits of jurors concerning a quotient verdict. This result is compatible with federal cases. *See McDonald v. Pless,* 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300, 1302 (1915); *Scogin v. Century Fitness, Inc.,* 780 F.2d 1316, 1319–20 (8th Cir. 1985) (affidavit of juror alleging quotient verdict was not competent under Federal Rule of Evidence 606(b)).

## IV. *Punitive Damage Award.*

■ Ryan asserts that the punitive damage award is excessive and demonstrates prejudice and passion on the part of the jury. He supports this claim with a mathematical comparison of the actual damage award of $120 and the punitive damage award of $18,600. Ryan incorrectly argued that *Saunders v. Mullen,* 66 Iowa 728, 729–30, 24 N.W. 529, 529–30 (1885), established a mathematical limit based on the ratio of actual and punitive damages. In the early case of *Saunders,* we found that damages of $700 were excessive based on the facts of that case. *Saunders* did not establish a mathematical ratio for compari-

son of punitive and actual damages. *See id.*, 24 N.W. at 529–30.

Actual damages are designed to compensate the injured party for the injury caused by wrongful acts. Punitive damages, on the other hand, are not compensatory. *Northrup v. Miles Homes, Inc.*, 204 N.W. 2d 850, 861 (Iowa 1973). They exist to punish the defendant and to deter the offending party and like-minded individuals from committing similar acts. *Pringle Tax Serv., Inc. v. Knoblauch*, 282 N.W.2d 151, 154 (Iowa 1979); *McCarthy v. J.P. Cullen & Son, Corp.*, 199 N.W.2d 362, 369 (Iowa 1972).

We have stated that punitive damages must be reasonably related to actual damages. *See McCarthy*, 199 N.W.2d at 369–70. Recent cases, however, have held that punitive damages may be awarded even if actual damages were shown but never awarded. *See Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 404 (Iowa 1982); *Pringle Tax Serv.*, 282 N.W.2d at 153–54. These cases show that our primary focus in review of a punitive damage award is the relationship between the punitive damage award and the wrongful conduct of the offending party.

An inflexible mathematical ratio which focuses on the plaintiff's injuries rather than the wrongful acts of the defendant fails to accomplish the policy objectives of punishment and deterrence and has been rejected in several jurisdictions. *See, e.g., Schreffler v. Board of Educ.*, 506 F.Supp. 1300, 1310 (1981 D.Del.); *Butcher v. Petranek*, 181 Mont. 358, 363–65, 593 P.2d 743, 746 (1979); *Star Credit Corp. v. Ingram*, 75 Misc.2d 299, 301–02, 347 N.Y.S.2d 651, 653–54 (N.Y.Civ.Ct.1973); *Hobbs v. Watkins*, 481 P.2d 746, 753–54 (Okla.1971); *Wehrman v. Liberty Petroleum Co.*, 382 S.W.2d 56, 66 (Mo.App.1964).

Although Iowa cases have discussed a relationship between actual and punitive damages, this court has expressly rejected the use of a mathematical ratio in examining punitive damages. *See McCarthy*, 199 N.W.2d at 369–70. Furthermore, Iowa cases have stated that legal precedent is of limited value in evaluating the damage award of a specific case. *See Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 861 (Iowa 1973); *McCarthy*, 199 N.W.2d at 369–70.

In determining whether punitive damages are so excessive that they demonstrate passion and prejudice on the part of the jury, we will consider whether the punitive damage award is reasonably related to the malicious conduct of the defendant which resulted in actual injury or damage to the plaintiff. We find the trial court did not exceed its discretion in denying Ryan's motion for judgment notwithstanding the verdict or new trial based upon an excessive punitive damage award.

### V. *Attorney Fees.*

◼ The court of appeals awarded the Arnesons $1000 for attorney fees incurred on appeal. Ryan challenges this award and cites *Kilmer v. Gallaher*, 120 Iowa 575, 576–77, 95 N.W. 180, 181 (1903), for the proposition that attorney fees cannot be awarded on appeal of an action brought under Iowa Code section 639.14 (1987). To the extent that *Kilmer* can be interpreted as limiting attorney fees on appeal, it is overruled.

Iowa Code section 639.14 (1987) provides:

> In an action on such bond, the plaintiff therein may recover, if the plaintiff shows that the attachment was wrongfully sued out ... reasonable attorney's fees to be fixed by the court....

*Id.* We construe this statute to allow attorney fees both at trial and on appeal. This construction is consistent with our interpretation of other statutes providing for attorney fees. *See, e.g., Goodwin v. Iowa State Highway Comm'n*, 369 N.W.2d 816, 820 (Iowa 1985) (attorney fees allowed on appeal of action on Iowa Code § 472.34); *Public Fin. Co. v. Van Blaricome*, 324 N.W.2d 716, 726 (Iowa 1982) (attorney fees allowed on appeal concerning Iowa Code § 537.5201(8)); *City of Bettendorf v. Abeln*, 261 Iowa 404, 154 N.W.2d 836, 844 (1967) (costs of appeal normally taxed to unsuccessful party); *Davis v. Rudolph*, 243 Iowa 744, 753–54, 52 N.W.2d 15, 21 (1952) (attorney fees awarded for appeal of

malicious prosecution based on wrongful attachment).

We affirm the district court judgment and decree entered on May 5, 1986, its rulings entered on September 12, 1986, and its order and judgment entered on October 7, 1986. We vacate the order of the court of appeals remanding the case for a new determination of damages. We vacate the order allowing $1000 in appellate attorney fees and remand to the district court for determination and allowance of attorney fees on appeal concerning proceedings before both the court of appeals and supreme court.

DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENTS AFFIRMED.