STATE of Iowa, Plaintiff–Appellee,

v.

Clark Allen BLAIR, Defendant–
Appellant.

No. 10–0215.

Court of Appeals of Iowa.

Feb. 9, 2011.

Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl Soich, Assistant Attorney General, Stephen Holmes, County Attorney, and Keisha Cretsinger, Assistant County Attorney, for appellee.

Considered by SACKETT, C.J., and VOGEL and VAITHESWARAN, JJ. TABOR, J., takes no part.

SACKETT, C.J.

Defendant, Clark Allen Blair, appeals from his conviction of indecent exposure, in violation of Iowa Code section 709.9 (2009). He contends 1) there is insufficient evidence to support his conviction of indecent exposure, 2) the jury improperly considered his failure to testify, and 3) his trial counsel was ineffective for failing to request a jury instruction addressing the defendant's failure to testify. He argues the district court should have granted his motion for judgment of acquittal and motion for a new trial.

**I. BACKGROUND AND PROCEEDINGS.** On September 2, 2009, eleven-year-old, C.P. was taking her dogs for a walk from her home to the library approximately a block away. On her way home, she saw children playing outside their home and looked across the street and saw a man standing in front of a bay window "playing with himself." The blinds on the window were closed and pulled partially down leaving open approximately ten inches from the bottom of the window. C.P. was not able to see the face of the man through the blinds but did see that he

was wearing blue shorts and a yellow shirt. She testified that she saw a man with his penis over the top of his pants looking like he was using the restroom, moving his hand back and forth like he was petting a dog. C.P. testified that she felt grossed out and went home to tell her stepdad.

After explaining what she saw, her stepfather, William Kirkman, told C.P. to stay inside the house while he walked over to investigate. He spoke with a woman who was outside with the children C.P. had seen earlier located directly across the street from the bay window. Kirkman did not see anyone in the window, but did see that the blinds were not completely pulled down. As he continued to walk around to investigate, he was approached by Clark Blair. Blair threatened Kirkman, who then called the police to report what his stepdaughter had seen.

When the deputy sheriff confronted Blair about the report, he was verbally combative and offered no explanation as to why C.P. would have seen what she claimed to see. Blair was arrested and charged with indecent exposure. The jury trial commenced on December 22, 2009, and after the State rested, Blair moved for a judgment of acquittal, contending that the State failed to prove 1) C.P. was not defendant's spouse as required by the statute, 2) Blair committed a sex act for the purpose of C.P. watching, and 3) Blair exposed himself for a sexual purpose. The court denied the motion and the jury returned a verdict of guilty on the count of indecent exposure.[1]

On January 14, 2010, Blair, through counsel, filed a motion for a new trial claiming among other things that the jury improperly considered his failure to testify and also that the charge of indecent expo-

sure was against the weight of the evidence. This motion was denied and Blair proceeded to sentencing on January 21, 2010. The morning of sentencing Blair made a motion to reconsider the ruling on motion for a new trial this time attaching an affidavit from a juror stating that the deciding factor among the panel was that Blair did not testify and thus must be guilty. The court once again denied the motion finding that there was sufficient evidence for the jury to find beyond a reasonable doubt that Blair committed the offense of indecent exposure even without considering his decision not to testify.

Blair was sentenced to one year in jail with all but ninety days suspended on the indecent exposure charge and thirty days in jail for the simple harassment to run concurrently. He was placed on probation for a term not to exceed eighteen months and ordered to register as a sex offender. The court amended its sentencing order on April 14, 2010, to sentence Blair to a special ten-year sentence under section 903B.2, which the court had neglected to do in the original sentencing.

**II. SUFFICIENCY OF THE EVIDENCE.** Blair contends the State presented insufficient evidence to convict him of the charge of indecent exposure. Specifically, he contends that there was no proof that he knowingly exposed his genitals to C.P. because the evidence established he could not see whether or not anyone was in a position to see him. In addition, he contends there was insufficient evidence to prove that he exposed himself to arouse or satisfy his sexual desires.

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Isaac,* 756 N.W.2d 817, 819

---

1. Blair was also charged with assault and harassment and convicted of simple harass-

ment, which is not at issue in this appeal.

(Iowa 2008). A guilty verdict is binding on us on appeal unless no substantial evidence in the record supports it. *Id.* Substantial evidence means evidence that could convince a rational jury that the defendant is guilty beyond a reasonable doubt. *Id.* We view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonable be deduced from the record. *State v. Leckington,* 713 N.W.2d 208, 213 (Iowa 2006). We consider all the evidence presented, not just that of an inculpatory nature. *State v. Lambert,* 612 N.W.2d 810, 813 (Iowa 2000). "Evidence that only raises suspicion, speculation or conjecture is not substantial." *Id.*

 Iowa Code section 709.9 provides,

A person who exposes the person's genitals or pubes to another not the person's spouse, . . . commits a serious misdemeanor, if:

1. The person does so to arouse or satisfy the sexual desires of either party; and
2. The person knows or reasonably should know that the act is offensive to the viewer.

This crime has been broken down into four elements:

1. The exposure of genitals or pubes to someone other than a spouse;
2. The act is done to arouse the sexual desires of either party;
3. The viewer was offended by the conduct; and
4. The actor knew, or under the circumstances should have known, the victim would be offended.

*State v. Jorgensen,* 758 N.W.2d 830, 834 (Iowa 2008). Blair challenges the first and second elements of crime claiming there

was no evidence to prove that he knew C.P. was present outside the window and there was no evidence to support the charge that his exposure was done to arouse his sexual desires.

First, Blair asserts there was insufficient evidence to prove he knowingly exposed his genitals because the blinds covered his face indicating that he may have had no idea that anyone could see him. He asserts there was no evidence to establish he could see through the blinds or that he made any noise to attract attention to himself. He contends there was no evidence to establish how close he was to the window or whether there were lights on inside his home. However, Blair misconstrues the requirements of the first element.

 The crime of indecent exposure does not require that the victim be the intended target of the actor. *Id.* at 836. "The statute does not require the actor to be aware or have knowledge of the specific person or persons to whom he is exposing himself." *Id.* The first element requires only that exposure must be to a person not the defendant's spouse.[2] *Id.* In *Jorgensen,* the court found that there was sufficient evidence to support the indecent exposure charge when three store employees observed the defendant masturbating on closed circuit surveillance system while defendant followed an unidentified woman through the store. *Id.* at 836–37. Despite the fact that the defendant did not know the store employees could see him on the surveillance system, the court found that "it was reasonable to assume that a person who exposes himself in public runs the risk that he will be observed by more than his targeted audience." *Id.* at 836.

---

2. While Blair claimed at trial the State failed to prove C.P. was not his spouse, he does not challenge this finding on appeal and we agree

with the district court that the circumstantial evidence in this case more than proves that the eleven-year-old C.P. was not his spouse.

In this case, even though there was no evidence that Blair knew C.P. was outside his window or that C.P. was his intended target, we find that the State presented substantial evidence from which the jury could find Blair exposed himself in a window and that he ran the risk that someone outside that window would observe him. C.P. testified there were other children playing directly across the street from Blair's unit. Blair had to be aware of his surroundings, facing forward in front of a bay window with the blinds partially pulled up while masturbating. Blair attempts to distinguish his case from *Jorgensen* by asserting that he was not in a public place, but was in his own home. We find this distinction inconsequential. Being in one's home does not insulate a person from criminal liability for indecent exposure. The words indecent exposure imply that

> the act is either in the actual presence and sight of others, or is in such a place or under such circumstances that the exhibition is liable to be seen by others, and is presumably made for that purpose, or with reckless and criminal disregard of the decencies of life.... The exposure becomes "indecent" only when [the actor] indulges in such practices at a time and place where, as a reasonable person, he knows, or ought to know, his act is open to the observation of others.

*Id.* We find that there was sufficient evidence for the jury to find that Blair knew he could be seen by others outside the window or ought to have known that others, including C.P., could see him when he exposed himself, despite the fact that he may not have been able to look outside the window at the precise time of exposure.

Blair also contends that there is insufficient evidence to prove he exposed himself with the intent to arouse or satisfy his sexual desires. The second element of indecent exposure requires that the exposure be sexually motivated. *Isaac*, 756 N.W.2d at 819. "[E]ven deliberate exposure done without a sexual motive, such as streaking, nude protesting or urinating in public is outside the proscription of section 709.9." *Id.* at 819–20. Whether the exposure is sexually motivated can be inferred from the defendant's conduct, his remarks and the surrounding circumstances. *Id.* at 820.

When viewing the evidence is the light most favorable to the State, we find that there was substantial evidence from which the jury could conclude that Blair exposed himself to satisfy his sexual desires. C.P. observed Blair with his hand holding his penis above the waistband of his pants, moving his hand back and forth like he was petting a dog. While C.P. could not see whether Blair's penis was pointed up or down, the fact that he was stroking his penis while standing in front of a bay window is sufficient evidence of Blair's sexual motivation.

We find that there was sufficient evidence to support the conviction of indecent exposure.

**III. MOTION FOR NEW TRIAL—JURY MISCONDUCT.** Blair next contends that the district court erred in denying his motion for a new trial based on the jury's improper consideration of his failure to testify. The standard of review for the denial of a motion for a new trial based on jury misconduct is abuse of discretion. *State v. Jones*, 511 N.W.2d 400, 409 (Iowa Ct.App.1993). Trial courts have board discretion in deciding whether the alleged misconduct warrants a new trial. *State v. Johnson*, 445 N.W.2d 337, 340 (Iowa 1989). We will not find an abuse of discretion unless the discretion was "exercised on grounds ... or to the extent clearly unreasonable." *Id.*

Blair filed a motion for a new trial on a number of issues including the belief the jury improperly considered his right not to testify. The trial judge found without a hearing that the issues raised by Blair's motion for a new trial "were all issues addressed at trial." On the morning of the sentencing hearing, Blair filed a motion to reconsider the ruling attaching an affidavit from a juror that stated,

the deciding factor among the panel was that Mr. Blair did not testify, thus he must be guilty. If a person didn't commit the crime, they would want to tell their side of the story. Given this is such a moral crime, a person couldn't not get up and say "no, I didn't do this."

The trial judge ruled that the motion for a new trial was untimely[3] and that "there was more than enough evidence on the record for a reasonable jury to conclude by evidence beyond a reasonable doubt that Mr. Blair committed the offense of indecent exposure even without considering his decision not to testify."

■■■ The initial step in establishing the right to a new trial based on jury misconduct is to offer evidence consisting of objective facts that demonstrates jury misconduct. *Ryan v. Arneson*, 422 N.W.2d 491, 493 (Iowa 1988); *see also Johnson*, 445 N.W.2d at 341 (outlining the three conditions that must be met in order to receive a new trial based on jury misconduct). The evidence offered must comply with Iowa Rule of Evidence 5.606(b):

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify *as to any matter or statement* occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or

emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether *extraneous prejudicial information* was improperly brought to the jury's attention or whether any *outside influence* was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Iowa R. Evid. 5.606(*b* ) (emphasis added). Based on Iowa's adoption of language identical to the Federal Rule of Evidence 606(*b* ), the court in *Ryan*, adopted the federal test that "protects each of the components of deliberation including juror arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process occurring in the jury room." 422 N.W.2d at 495. This test makes jurors incompetent to testify as to any matter or statement occurring in the course of deliberation. *Id.* Prior to this adoption, Iowa courts would allow juror testimony as to internal deliberations that could be considered "objective" and that did not inhere to the verdict. *Id.* The question presented in this case is whether the defendant's failure to testify was extraneous prejudicial information or an internal influence under the federal test.

Blair contends that the juror affidavit complied with Iowa Rule of Criminal Procedure 5.606(*b* )'s requirement that the evidence be extraneous prejudicial information, because it was a consideration of

<hr>

**3.** Blair contends and the State agrees on appeal that his motion for a new trial was timely filed under Iowa Rule of Criminal Procedure 2.24(2)(*a* ). We agree that his motion was

timely filed and will proceed to address whether the trial court abused its discretion in denying the motion for a new trial.

something lacking rather than a consideration of the evidence presented. While the Iowa Courts have not addressed this issue since adopting the new federal test,[4] the federal circuit courts have addressed this question.

In *United States v. Rodriguez*, 116 F.3d 1225, 1226–27 (8th Cir.1997), the eighth circuit held that jurors were prohibited by rule 606(*b*) from testifying that they discussed the defendant's failure to testify as part of their deliberation. The court found that the jury did not learn of the fact that the defendant did not testify from some outside communication, but learned it as part of the trial. *Id.* While the court acknowledged that the jury should not have discussed the defendant's silence, the information was not extraneous to the trial and thus, the jury members are prohibited from testifying about it. *Id.; see also U.S. v. Tran*, 122 F.3d 670, 672–73 (8th Cir. 1997) (holding that defendant's failure to testify "was not 'extraneous prejudicial information' because it was known to the jurors as a result of their presence at the trial, not as a result of something disclosed to them that had not occurred in the courtroom").

Thus, we hold that the juror's affidavit asserting that defendant's failure to testify was a deciding factor in the case does not fall within the exception under Rule 5.606(*b*). It was not based on extraneous prejudicial information or an outside influence, but was gathered from the juror's presence in the trial. Because the affidavit is not proper evidence to support Blair's claim of jury misconduct, the district court was correct and did not abuse its discretion in denying Blair's motion for a new trial on that basis.

■ **IV. INEFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO REQUEST JURY INSTRUCTION.** Finally, Blair asserts that he is entitled to a new trial because his trial counsel was ineffective for failing to request a jury instruction addressing his failure to testify. The State contends that Blair's counsel was not ineffective in failing to request the instruction because the issue of Blair's failure to testify was fully addressed in voir dire and no prejudice resulted from not having the instruction. In addition, the State contends that the evidence Blair offers to demonstrate prejudice is improper under Iowa Rule of Evidence 5.606(*b*) as discussed above. State asserts that if the affidavit is improper to show misconduct of the jury, it is also improper to show prejudice under an ineffective assistance of counsel claim.

In ineffective-assistance-of-counsel claims, a defendant must show that his trial or appellate counsel 1) failed to perform an essential duty, and 2) prejudice resulted. *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). If either element is not met, the claim will fail. *Anfinson*, 758 N.W.2d at 499. To demonstrate prejudice, the defendant must show that "but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Alleged constitutional violations, including ineffective assistance of counsel claims, are re-

---

**4.** Iowa Supreme Court did address the issue in *State v. Kaufman*, 265 N.W.2d 610, 618–19 (Iowa 1978) under the old objective/subjective test. The court found that defendant could not support a claim of jury misconduct with an affidavit from a juror that stated several members of the jury cogitated on the question as to why the defendant had not taken the stand. *Id.* The court found that "a juror cannot impeach the verdict by stating what considerations influenced the jury's determination since such considerations inhere in the verdict." *Id.*

viewed de novo. *Osborn v. State*, 573 N.W.2d 917, 920 (Iowa 1998).

 Ineffective assistance of counsel claims are normally preserved for postconviction relief proceedings because at a postconviction relief hearing, trial counsel will have an opportunity to explain her conduct and performance. *State v. Slayton*, 417 N.W.2d 432, 436 (Iowa 1987). However, some claims "may be determined on direct appeal when the record adequately presents them." *State v. Glaus*, 455 N.W.2d 274, 276 (Iowa Ct.App.1990). The issue of counsel's failure to request a jury instruction has been held to be a matter better suited for postconviction relief because counsel may have had a tactical reason for not requesting the jury instruction in question, which may not be apparent on the record that currently exists. *Id.* This is especially true in cases dealing with the failure to testify jury instruction.

The Iowa Supreme Court held in *State v. Kimball*, 176 N.W.2d 864, 869 (Iowa 1970) that an instruction that commented on a defendant's failure to testify, even though it is supposedly for the defendant's benefit, may inadvertently cause the jurors to consider adverse inferences which would otherwise not have entered their mind. This led the court to hold that in the future this instruction was to be given only if the defendant requested it and it would be error if the court gave it without such a request. *Id.* In this case, it is clear from the record that counsel did not request the instruction and the court did not give it sua sponte in compliance with *Kimball*. *Id.* What is not clear from the record we have in front of us is what reason counsel had for not requesting the instruction. We therefore choose to preserve Blair's claim of ineffective assistance of counsel for postconviction relief proceedings to provide trial counsel her day in court.

**AFFIRMED.**