# IN THE COURT OF APPEALS OF IOWA

No. 14-0904
Filed June 24, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DOUGLAS ALLEN SAYLER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Kathleen A.

Kilnoski, Judge.


        Douglas Sayler appeals following his conviction for second-degree

criminal mischief.  **CONVICTION AFFIRMED; DISMISSAL ORDER VACATED**

**AND REMANDED WITH DIRECTIONS.**


        Mark C. Smith, State Appellate Defender, and Joseph A. Fraioli, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney

General, Matthew Wilber, County Attorney, and Thomas Nelson, Assistant

County Attorney, for appellee.


        Considered by Potterfield, P.J., Mullins, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**POTTERFIELD, P.J.**

Douglas Sayler appeals following his conviction for second-degree criminal mischief, in violation of Iowa Code sections 716.1 and .4 (2013). He contends there was insufficient evidence his actions were not justified to sustain the conviction. He also asserts trial counsel was ineffective in failing to seek an additional jury instruction and in not adequately supporting a claim of juror misconduct. Finally, Sayler urges he was improperly assessed costs on a dismissed charge of assault causing bodily injury. We affirm the conviction. We vacate the order to dismiss the charge of assault causing bodily injury and remand with instructions that the district court enter a corrected order, assessing no costs with respect to the dismissed charge.

**I. Background Facts and Proceedings.**

Sayler was convicted of criminal mischief in the second-degree after his neighbors, the Whitneys, who were driving home on the evening of January 17, 2013, came across Sayler walking on their private drive. The Whitneys pulled their vehicle alongside Sayler and told him he had previously been informed by themselves and the sheriff not to enter their property. Angry words were exchanged. Sayler yelled at the driver to exit the vehicle and "fight like a man." Sayler hit the passenger door, the hood, and the driver's side door of the neighbors' car with his walking stick. As passenger Carrie Whitney was attempting to locate her cell phone to call police, Sayler sprayed her with pepper spray. The Whitneys then drove away, and Sayler returned to his house. When Deputy Sheriff Eric Shea questioned Sayler at his residence later about the

encounter, Sayler stated he did not know what the officer was talking about, he had not been on the road, and he had been home all evening.

The State charged Saylor with criminal mischief and assault causing bodily injury, and the case was tried to a jury. At the close of the State's presentation of evidence, Sayler moved for a judgment of acquittal on the criminal mischief charge, arguing the State had not proved specific intent to damage the vehicle. That motion was overruled. Sayler stated he had been hit by the Whitneys' vehicle during the encounter. He testified he had acted in self-defense:

> Q. Why did you hit the Whitneys' vehicle with your walking stick? A. Because it was a tailgate, and I didn't think on a truck that should make any difference to anyone, but it should—if they're not paying any attention to you, you have to do something to get their attention.
> Q. After you hit the vehicle with your walking stick and the vehicle still didn't leave, what did you do? A. I was becoming enraged and extremely frustrated that I didn't have any way of safe egress from the situation, and so I struck the side of the vehicle, and I screamed louder, you know, to—well, I screamed louder for him to remove himself.
> . . . .
> A. Well, he was—actually what he was doing is he was—at that point he was operating his vehicle—he was hot dogging it. He was trying to like edge it closer to the edge, forward and reverse, and just a few feet forward and back and spinning the wheels, and I don't know why he was doing that.
> Q. Did you feel there was any safe way for you to leave the situation? A. Safe way, absolutely not. I was trying to think of what would be the least damaging way for me to leave the situation.

On cross-examination, Sayler testified further:

> Q. Okay. After you struck the vehicle with your walking stick, why did you subsequently spray the entire can of pepper spray in the vehicle? A. I thought they had been warned sufficiently that they had committed an assault and battery, and that they had a requirement to what do you call it, stop, and—stop and render aid. The law says stop causing harm. And, yes, I wanted them to stop

causing harm, and I told them specifically, remove the vehicle, it's a threat.

Q. Okay. Remove the vehicle from the roadway. You expected them to leave? A. Well, I expected them to remove it some distance that would give me a chance to repair myself to safety.

. . . .

Q. All right. I just have a couple more questions for you, Mr. Sayler. Was an alternative course of action available to you that night besides striking the vehicle with your walking stick? A. I could have probably done harm to myself in trying to extricate myself, and that would have probably been used against me. They would say looks like you've been brawling tonight, and that's pretty much an automatic conviction if they want to say that I got in front of his vehicle and he had to strike me in order to go home. So really I was trying to stay safe myself, and my first duty at that time was to myself and not to anyone else. I did have—and I had a duty to the public, I had a duty to—to some extent to the occupants of the vehicle.

. . . .

Q. Did you believe you were in imminent threat or injury? A. Actually when I got up around their window and they were just a wall towards me, yes, I thought they were going to do something, that would they would try to obfuscate, they would wipe me out, wipe me out and give them every opportunity to lie and call it whatever you will and exonerate themselves and I just wouldn't ever really get my say. Yes, I felt that my life was very much in danger at that time. I felt that my life was possibly in danger many times, the several times that Whitneys come along to me on that public road and said, I'm going to have you arrested, you're trespassing. That's a threat on my life, to my knowledge. They're going to put you in jail because you appear in public.

The jury was instructed that to prove criminal mischief the State had to prove all the following elements:

1. On or about January 17, 2013, the defendant damaged, altered, defaced, or destroyed a 2001 Chevrolet Suburban belonging to Mark and Carrie Whitney.
2. The defendant acted with the specific intent to damage, deface, alter, or destroy the property.
3. When the defendant damaged, defaced, altered, or destroyed the property, he did not have the right to do so.

As to Sayler's claim of self-defense, the jury was instructed:

A person is justified in using reasonable force if he reasonably believes the force is necessary to defend himself from any imminent use of unlawful force.

If the State has proved any one of the following elements, the defendant was not justified:

1. The defendant started or continued the incident which resulted in injury.

2. An alternative course of action was available to the defendant.

3. The defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him.

4. The defendant did not have reasonable grounds for the belief.

5. The force used by the defendant was unreasonable.

In closing argument, the defense argued Sayler had attempted to move out of the way but the Whitneys continued the confrontation, and Sayler "didn't know what else he could possibly do." The State argued there was an alternative course of action—"It was an open road."

During deliberations, the jury sent a question to the court, "[D]oes he have to exhaust all alternative courses of action? Or does he only have to try one of the alternate actions available?" The court responded, "The instruction sets out the law. Please reread the instruction." The jury found Sayler guilty of second-degree criminal mischief.[1] The jury was polled, and each juror indicated it was their verdict. The jury did not, however, reach unanimity on the count of assault causing bodily injury, nor on the lesser included charge of simple assault.

The State subsequently moved to dismiss the charge of assault causing bodily injury. On March 4, 2014, the court ordered the dismissal of the assault

---

[1] The jury determined the cost of repair or replacement was more than $1000 but not more than $10,000.

count. The order provides "the charge of assault causing bodily injury . . . is dismissed with costs assessed to the defendant."

Sayler moved for a new trial, claiming in part the criminal mischief verdict was a compromise verdict. Defense counsel's motion generally described statements purportedly made by jurors that the criminal mischief verdict was the result of compromise. The prosecutor resisted, noting Iowa Rule of Evidence 5.606 does not allow a juror to testify about statements made during deliberations. The court overruled the motion for new trial. Sayler was sentenced to a five-year term and was given credit for time served; the sentence was suspended.

On appeal, Sayler asserts (1) the trial court erred in denying his motion for judgment of acquittal because the State failed to meet its burden that his actions were not justified, (2) he was denied effective assistance of counsel, and (3) the court erred in taxing costs on a dismissed charge.

## II. Scope and Standards of Review.

We review sufficiency-of-the-evidence claims for a correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

Claims of ineffective assistance of counsel, however, which arise from the Sixth Amendment to the United States Constitution, are reviewed de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

Because statutory construction is involved, we review the assessment of costs in the order dismissing a charge for errors of law. *See State v. Dudley*, 766 N.W.2d 606, 624 (Iowa 2009).

**III. Discussion.**

*A. Sufficiency of the evidence.* "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself . . . from any imminent use of unlawful force." Iowa Code § 704.3. When a defendant raises justification as a defense, the State is required to prove the absence of justification. *State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006). Sayler contends there is not sufficient evidence of the absence of justification.

In assessing the sufficiency of the evidence, we are obliged to view the record in a light most favorable to the State. *State v. Showens*, 845 N.W.2d 436, 439-40 (Iowa 2014). "We will uphold a verdict if substantial record evidence supports it." *Id.* (citation and internal quotation marks omitted). "If the evidence could convince a rational trier of fact the defendant is guilty of the charged crime beyond a reasonable doubt, it is substantial." *Shanahan*, 712 N.W.2d at 134.

Whether the defendant acted without justification was a fact question for the jury to decide. *See* Iowa R. Crim. P. 2.21(2); *State v. Badgett*, 167 N.W.2d 680, 683 (Iowa 1969). "[T]he jury is at liberty to believe or disbelieve the testimony of witnesses as it chooses and give such weight to the evidence as in its judgment the evidence was entitled to receive." *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984); *accord Shanahan*, 712 N.W.2d at 135. "The function of the jury is to weigh the evidence and 'place credibility where it belongs.'" *Shanahan*, 712 N.W.2d at 135.

We conclude the State presented sufficient evidence that Sayler's actions were without justification, and thus, there is substantial evidence to sustain the

conviction. From the evidence presented, the jury could have found the State proved any of the following: Sayler "started or continued the incident which resulted in injury," "an alternative course of action was available to" Sayler, Sayler "did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him," or Sayler "did not have reasonable grounds for the belief" he was in imminent danger. When the Whitneys first addressed Sayler on the road, Sayler walked away from them—continuing toward the Whitneys' house, rather than away from their property and toward his own home. The country road on which the encounter occurred was adjacent to open area over which Sayler could have walked to his home. From Sayler's own testimony the jury could have determined he did not believe he was in imminent danger of death or injury or that such a belief was unreasonable. There is substantial evidence rebutting Sayler's justification claim to sustain the conviction.

*B. Effective assistance of counsel.* We ordinarily preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings, particularly if the challenged actions of counsel implicate trial tactics or strategy that might be explained in a fully developed record. *Clay*, 824 N.W.2d at 494. We will resolve such claims on appeal only when the record is adequate. *Id.*

*1. Claim of juror misconduct.* Sayler complains that trial counsel provided only hearsay statements from jurors that the verdict was a compromise, which was a breach of an essential duty.

Our supreme court has recently explained:

> Ineffective assistance of counsel constitutes deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness, under prevailing professional norms. Not every claim of ineffective assistance, even a meritorious one, requires reversal of a criminal conviction. To prevail on a claim of ineffective assistance of counsel, a claimant must satisfy the *Strickland* [*v. Washington*, 466 U.S. 668, 687 (1984)], test by showing (1) counsel failed to perform an essential duty; and (2) prejudice resulted. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 494-95 (alterations, citations, and internal quotation marks omitted). We presume counsel performed competently. *Id.* at 495. We deny the claim if the defendant fails to establish either prong. *See id.* at 495-96.

Here, Sayler contends trial counsel should have presented affidavits from jurors rather than hearsay and "had trial counsel supplied the court with something other than mere hearsay . . . it is very likely the court would not have denied Sayler's motion for a new trial." But, evidence purported to show juror misconduct "must comply with Iowa Rule of Evidence 5.606(b)." *State v. Blair*, 798 N.W.2d 322, 327 (Iowa Ct. App. 2011). Under that rule, jurors are "incompetent to testify as to any matter or statement occurring in the course of deliberation." *Id.* Because juror affidavits would not have been proper evidence to support Sayler's claim of jury misconduct, counsel did not breach an essential duty in not submitting such affidavits. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011) ("We will not find counsel incompetent for failing to pursue a meritless issue.").

    *2. Failure to request an additional instruction.* Sayler also contends counsel failed to request an additional instruction outlining exceptions to the

alternative-course-of-action requirement of his justification defense. *See* Iowa Crim. Jury Instruction No. 400.10 (informing jury that the defendant need not pursue an alternative course of action "[i]f the alternative course of action involved a risk to [his] life or safety, and [he] reasonably believed that"). However, Sayler must prove prejudice by a preponderance of the evidence. *Clay*, 824 N.W.2d at 496. "'In determining whether this standard has been met, we must consider the totality of the evidence, what factual findings would have been affected by counsel's [asserted] errors, and whether the effect was pervasive or isolated and trivial.'" *Id.* (quoting *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003)). "Counsel's unprofessional errors resulting in the mere impairment of presenting the defense is not sufficiently prejudicial." *Id.* Sayler was not impaired in presenting his defense, and we conclude it is not more likely that an altered outcome would have occurred had the additional instruction been given. Sayler has failed to establish his ineffectiveness claims.

*C. Assessed costs on dismissed charge.* Iowa Code section 815.13 provides in pertinent part "fees and costs are recoverable by the county or city from the defendant unless the defendant is found not guilty or the action is dismissed." The assault charge was dismissed here. "[I]t is elementary that a winning party does not pay court costs." *Dudley,* 766 N.W.2d at 624. We therefore vacate the March 4, 2014 order dismissing the charge of assault causing bodily injury and remand with instructions that the district court enter a corrected order, assessing no costs with respect to the dismissed charge.

**CONVICTION AFFIRMED; DISMISSAL ORDER VACATED AND REMANDED WITH DIRECTIONS.**