# IN THE COURT OF APPEALS OF IOWA

No. 15-0466
Filed May 11, 2016

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**BRANDON LYNN SCHAUL,**
       Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Lars G. Anderson, Judge.

A defendant appeals his conviction for homicide by vehicle. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**SCOTT, Senior Judge.**

Brandon Schaul appeals from his convictions for homicide by vehicle, in violation of Iowa Code section 707.6A(1) (2013), and serious injury by vehicle, in violation of Iowa Code section 707.6A(4). Schaul contends there is insufficient evidence to support his convictions because the State failed to show he was under the influence or that his intoxication caused the collision. He also asserts his counsel provided ineffective assistance when counsel failed to object to the admission of his medical records, or at least object to the inadmissible portions of those records, on hearsay grounds. Finally, he claims the court erred in overruling his objection to the marshalling instruction that the evidence did not support including "drugs" in the determination of whether he was under the influence. We affirm.

**I. Background Facts and Proceedings.**

At 12:46 a.m. on May 18, 2013, Rachel Denny was driving home from the hospital with her toddler on highway 13 north of Central City. At that moment, Schaul, traveling in the opposite direction of Denny, crossed over the center line of the highway, striking Denny head on. Denny was killed, and her toddler was severely injured.[1] Passersby rendered aid and described Schaul as disoriented, dazed, and in shock. Schaul repeatedly entered and exited his vehicle through the broken window and was obsessed with locating something. Those on the scene were unable to get Schaul to sit still.

---

[1] The child has a spinal cord injury and a traumatic brain injury. The child's father testified she is ventilator dependent and has little to no movement below her neck as a result of the collision.

When the officer arrived, Schaul was back inside the truck, "moving around the truck a lot," and attempting to climb out of the truck through the driver's window. The officer assisting Schaul described him as "in a very upset, excited state" and "very agitated." After fire department personnel got the rear door open, the officer was able to convince Schaul to exit the vehicle through the open door so he would not continue to crawl through the broken glass of the window. Schaul finally agreed to lie on the ground and allowed medical personnel to assess his condition. Witnesses observed many beer cans on the floor of Schaul's vehicle, and the officer attending to Schaul smelled alcohol both in the Schaul's vehicle and coming from Schaul's breath.

The officer followed Schaul's ambulance to the hospital where he asked Schaul to consent to a preliminary breath test. While Schaul initially agreed to the test, he did not provide an adequate sample, and he refused to provide further samples. The officer asked Schaul if he had been drinking, and Schaul admitted to having eight to ten beers that night. Schaul refused to provide a blood specimen for testing, and the officer obtained a search warrant for the sample. A sample was taken pursuant to the warrant at 5:11 a.m. The testing did not indicate the presence of alcohol but was positive for an inactive metabolite of marijuana.

At trial, the State offered the testimony of Richard Yoder, an accident reconstructionist. In Yoder's opinion Schaul's vehicle completely crossed over into Denny's lane of travel resulting in an "offset head-on" collision. There were no weather conditions or road conditions that played a part in the collision, though it was dark at that part of the highway with no direct lighting overhead.

From the data recorders in the vehicles, Yoder was able to determine both vehicles were traveling at or slightly above the fifty-five miles-per-hour speed limit, Denny had the cruise control engaged, and neither car engaged the brakes before impact.

At trial, Schaul offered an expert, James O'Donnell, to provide an opinion on his level of intoxication at the time of the collision. While Schaul was in the emergency room receiving treatment, samples of Schaul's blood and urine were taken. A blood sample taken at 2:07 a.m. (approximately eighty-one minutes after the crash) indicated Schaul's blood alcohol level was .054. A urine sample taken at 2:36 a.m. was positive for cannabinoids. O'Donnell extrapolated the blood alcohol level back to time of the collision and estimated Schaul's blood alcohol content was .072 when the collision occurred. O'Donnell also testified Schaul admitted to him in a telephone interview to smoking marijuana in the afternoon on the day prior to the collision. Based on his expertise, O'Donnell opined Schaul was not intoxicated from, impaired by, or under the influence of alcohol or marijuana at the time of the collision.

In rebuttal, the State offered the testimony of Justin Grodnitzky, a criminalist with the Iowa Division of Criminal Investigation, whose specialty is toxicology. Grodnitzky testified studies on alcohol's effect on driving show impairment at levels as low as .05. Grodnitzky testified there is a lack of coordination, slowed reaction time, diminished ability to pay attention, decreased peripheral vision, and a slower ability to adapt to changes in light. He related a study that found at .07 a person is 2.1 times more likely to be in an accident than a sober driver. In addition, Grodnitzky stated when alcohol and marijuana are

combined there is an additive effect, making it more detrimental than consuming either item separately.

The jury returned a guilty verdict on both counts against Schaul—homicide by vehicle for the death of Denny and serious injury by vehicle for the injuries the child sustained. He was sentenced to consecutive terms of twenty-five years and five years. A fine was assessed, as was victim restitution and court costs. He was ordered to obtain a substance abuse evaluation and complete any recommended treatment, and complete the drinking drivers program. His driving privileges were barred for six years, and he was ordered to provide a DNA sample for profiling.

Schaul appeals, challenging the sufficiency of the evidence, his counsel's representation, and the court's denial of his objection to a jury instruction.

## II. Scope and Standard of Review.

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016). We consider "all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* (citation omitted). If substantial evidence supports the verdict, we will uphold it. *Id.* Evidence is substantial when "it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* at 704–05 (citation omitted). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *Id.* at 705 (alteration in original) (citation omitted).

Ineffective-assistance-of-counsel claims are reviewed de novo because they implicate a defendant's Sixth Amendment right to counsel. *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015). To prove counsel was ineffective, a defendant must establish by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) counsel's failure resulted in prejudice. *Id.* at 320.

"We review challenges to jury instructions for correction of errors at law." *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015) (citation omitted). A court's refusal to give the defendant's requested instruction is reviewed for an abuse of discretion. *State v. Becker*, 818 N.W.2d 135, 140 (Iowa 2012). If we find an error in giving or refusing to give a jury instruction, a reversal is not warranted unless the error resulted in prejudice to the complaining party. *Hoyman*, 863 N.W.2d at 7.

## III. Sufficiency of the Evidence.

In his first claim on appeal, Schaul argues there was insufficient evidence to prove he was under the influence of alcohol or drugs at the time of the collision and also that his impaired driving caused Denny's death and the child's serious injury. Pursuant to the jury instructions, both counts required the State to prove Schaul operated a motor vehicle "while under the influence of alcohol or a drug or a combination of such substance" and that this act "caused or was a substantial factor" in Denny's death and the child's serious injury.

The jury was informed:

> A person is "under the influence" of alcohol or a drug or a combination of such substances when, by drinking liquor and/or

beer and/or taking a drug or any combination thereof, one or more of the following is true:

 1. His reason or mental ability has been affected.
 2. His judgment is impaired.
 3. His emotions are visibly excited.
 4. He has, to any extent, lost control of bodily actions or motions.

Schaul admitted to the responding officer he had consumed eight to ten beers the night of the collision, and the officer said Schaul smelled like alcohol. Schaul admitted to smoking marijuana the afternoon before the collision. Schaul's expert testified, based on his calculations, Schaul's blood alcohol content at the time of the collision was .072. The State's expert testified impairment is seen with blood alcohol content as low as .05 and a person with a blood alcohol content of .07 is 2.1 times more likely to be in an accident than a sober driver. Schaul was described as disoriented, dazed, in shock, very upset, in an excited state, and very agitated. These descriptions and Schaul's erratic behavior following the collision—repeatedly crawling through the broken window of his vehicle searching for something—support a conclusion he was visibly excited and his reason and mental ability were affected. While Schaul points to other evidence to support his assertion he was not under the influence, we must view the evidence in the light most favorable to the verdict, including all reasonable inferences. *See Reed*, 875 N.W.2d at 704. The jury was free to disregard the opinions of Schaul's expert, O'Donnell, who asserted Schaul was not impaired by alcohol or drugs at the time of the accidence. *See id.* at 705. We conclude substantial evidence supports the under-the-influence element of the offenses.

As to causation, the State must prove "a factual causal connection between a specific criminal act—'intoxicated driving'—and the victim's death." *See State v. Adams*, 810 N.W.2d 365, 371 (Iowa 2012). "[T]he determination of factual causation turns simply on whether '"the harm would not have occurred absent the [defendant's] conduct."'" *Id.* at 372 (second alteration in original) (citations omitted). "[P]roximate cause is established in a criminal case if the defendant's conduct 'is a "substantial factor" in bringing about the harm and . . . there is no other rule of law relieving the defendant of liability because of the manner in which h[is] conduct resulted in the harm.'" *Id.* at 371 (citation omitted).

As to this claim, Schaul asserts the State failed to establish his intoxicated state contributed to the collision. He points to the facts that the collision occurred at night, on a dark highway, and at a point where the roadway had a slight curve. While he agrees his driving caused the collision, he claims there was no proof his intoxicated driving caused the collision because it is foreseeable a sober driver traveling along a darkened road just after midnight might also fail to maneuver the curve and cross into oncoming traffic.

The accident reconstructionist, Yoder, testified there were no weather or road conditions that impacted this collision. While Schaul contends the road curved just before the location of the collision, Yoder testified the road was straight. Yoder concluded, based on his investigation, Schaul crossed completely into the oncoming lane, driving fifty-five miles per hour, and struck Denny's vehicle head-on without applying his brakes. Grodnitzky testified blood alcohol content as low as .05 can result in a lack of coordination, slowed reaction time, diminished ability to pay attention, decreased peripheral vision, and a

slower ability to adapt to changes in light. This evidence, combined with the evidence of intoxication outlined above, provides substantial evidence to support the causation element of the offenses. We conclude sufficient evidence supports the jury's verdict.

## IV. Ineffective Assistance of Counsel.

Next, Schaul claims his attorney was ineffective when counsel failed to object on hearsay grounds to the State's offer of Schaul's medical records from the emergency room. Schaul's expert relied on the medical records in forming his opinions and making his calculations. When the State offered the medical records, defense counsel objected based on doctor-patient confidentiality. *See State v. Henneberry*, 558 N.W.2d 708, 711 (Iowa 1997) (holding a blood sample taken by medical personal for diagnostic and treatment purposes only and not as authorized under the statutory implied-consent provision was inadmissible under the physician-patient privilege). The court denied defense counsel's objection, finding the *Henneberry* case distinguishable because Schaul put his medical records at issue when his expert relied on them to reach his conclusions. At trial defense counsel did not object to the records on hearsay grounds. Noting the error-preservation problem, Schaul raises this claim through the lens of ineffective assistance of counsel. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006) (noting ineffective-assistance claims are an exception to the general error-preservation rules).

Ineffective-assistance claims are normally preserved for postconviction-relief proceedings. *State v. Blair*, 798 N.W.2d 322, 329 (Iowa Ct. App. 2011). This gives counsel an opportunity to explain his conduct and allows for the

development of a full record. *Id.* Upon considering this claim, we determine the record is not adequate to address it on direct appeal, and we preserve it for possible postconviction-relief proceedings. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) (noting when an ineffective-assistance claim is made on direct appeal, the appellate court must decide whether the record is adequate to address the claim, and if not, the claim must be preserved for postconviction relief).

**V. Jury Instruction.**

In Schaul's final claim on appeal, he asserts the district court should have granted his request to modify the marshalling instructions given to the jury. Schaul was originally charged under both the "under the influence" and the "controlled substance" alternatives of Iowa Code section 321J.2.[2] Prior to submission of this case to the jury, the court granted Schaul's motion for judgment of acquittal with respect to the "controlled substance" alternative, concluding that, while there was evidence Schaul had a detectable amount of a controlled substance in his urine, the State failed to establish the causal connection between the controlled substance and the collision. This left only the

---

[2] Iowa Code section 707.6A(1) provides a person is guilty of homicide by vehicle if "the person unintentionally causes the death of another by operating a motor vehicle while intoxicated, as prohibited by section 321J.2." Section 707.6A(4) criminalizes unintentionally causing serious injury to another by any means described in subsection 1. A person is guilty of operating a vehicle while intoxicated under section 321J.2,

> if the person operates a motor vehicle in this state in any of the following conditions:
>
> a. While under the influence of an alcoholic beverage or other drug or a combination of such substances.
>
> . . . .
>
> c. While any amount of a controlled substance is present in the person, as measured in the person's blood or urine.

"under the influence" alternative to be submitted to the jury on the charges of homicide and serious injury by vehicle.

During the hearing on the jury instructions, Schaul asked the court to remove language from the "under the influence" alternative that referenced being under the influence of a drug or combination of drugs and alcohol in light of the court's ruling on the "controlled substances" alternative. *See* Iowa Code § 321J.2(1)(a) ("While under the influence of an alcoholic beverage or other drug or a combination of such substances."). The court rejected the modification, concluding it was a fact question for the jury. Schaul asserts on appeal this ruling was in error and there was not sufficient evidence to support the submission of "or other drug or a combination of such substances" in the marshalling instructions. Because of the insufficient evidence to support the alternative theory, Schaul asserts this case must be reversed and remanded for a new trial. *See State v. Tyler*, 873 N.W.2d 741, 753–54 (Iowa 2016) (noting when an alternative legal theory is not supported by sufficient evidence the case must be reversed and remanded for a new trial).

The jury was presented with evidence Schaul had cannabinoids in his system at 2:36 a.m. on the night of the collision. Schaul's expert testified Schaul admitted to smoking marijuana in the afternoon before the collision. The blood sample taken at 5:11 a.m. was positive for a marijuana metabolite, though Schaul's expert said the metabolite was inactive and would have had no effect on Schaul's driving. Schaul's expert also explained marijuana is a central nervous system depressant, just like alcohol. The State's expert explained that when combined with alcohol, marijuana had an additive effect—making it more

detrimental than consuming alcohol or marijuana individually. Based on this evidence, we find the court did not err in refusing to remove the "or other drug or a combination of such substances" language from the "under the influence" alternative of the marshalling instruction for the homicide-by-vehicle and serious-injury-by-vehicle counts.

## VI. Conclusion.

Because we conclude there was substantial evidence to show Schaul was under the influence and that the intoxication caused the collision, we deny Schaul's sufficiency-of-the-evidence challenge to his convictions for homicide by vehicle and serious injury by vehicle. We preserve for postconviction relief his claim that his counsel provided ineffective assistance by failing to object on hearsay grounds when the State offered his medical records from the emergency room into evidence. Finally, we find no error in the court's denial of Schaul's request to modify the marshalling instructions in this case. We affirm Schaul's convictions.

**AFFIRMED.**