**IN THE COURT OF APPEALS OF IOWA**

No. 22-1110
Filed April 24, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHRIS WILLIAM KELLY, JR.,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Johnson County,
Deborah Farmer Minot, Judge.


    A defendant challenges the denial of his motion for a new trial on weight-of-the-evidence grounds. **AFFIRMED.**


    Thomas M. McIntee, Williamsburg, for appellant.

    Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.


    Considered by Tabor, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

While renting an attic room in a large, older home in Iowa City, Chris Kelly repeatedly exposed his penis and masturbated in front of his neighbors. A jury convicted him on one count of indecent exposure, and the district court denied his motion for a new trial. Kelly appeals, claiming the jury's verdict was contrary to the weight of the evidence.

"We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Stendrup*, 983 N.W.2d 231, 246 (Iowa 2022) (quoting *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016)). "Our review is not to determine whether the verdict is contrary to the weight of the evidence but only to determine whether the district court abused its considerable discretion in denying the motion." *Id.* "This is a deferential standard, and we will not reverse the district court's ruling absent a 'clear and manifest abuse of discretion.'" *Id.* We find no abuse of discretion here.

Kelly started renting his attic room in October 2020. He had his own kitchen but shared a bathroom with the residents on the second floor. Rosa was one of those residents, and she had many complaints about Kelly after he moved in upstairs. First, it was his loud music. Then, Kelly began exposing himself to her. Rosa thought the first time was in late January 2021. She was walking down the hall to the kitchen, and Kelly came out of the nearby bathroom completely naked from the waist down. Shocked, Rosa went back to her bedroom.

The second time happened when Kelly begged Rosa to clean his apartment before his son and girlfriend came for a visit. Rosa agreed only after Kelly asked her "I don't know how many times" and promised to pay her $20 per hour. Kelly

stayed in his bedroom with the door shut and the lights off while Rosa cleaned, although he did come out one time to ask her to cook dinner for his son. When Rosa was done, she knocked on Kelly's bedroom door. He told her to come in. Rosa testified that when she opened the door, Kelly's

> TV was on with porn on it. He was sitting in his chair with his shorts down to about his knees or his ankles. He was playing with himself, stroking his penis. His laptop was laying on his lap, and it was open all the way to where it was almost flat, and there was porn on it too.

Rosa was shocked and "ready to go out the door," but she told Kelly what he owed her. She testified that Kelly told her "to come on in." When she refused, Kelly threw $20 on the bed. Rosa grabbed the money and left. She made a complaint to the landlord, but his office directed her to contact law enforcement.

Rosa tried to avoid Kelly after that incident, which left her "[v]ery uncomfortable, very insecure, very agitated." But she had another run-in with him after a grocery store trip. Rosa was walking to her room with her groceries when Kelly came up the stairway behind her. He followed her into her room. As she was setting her groceries down, Kelly "sat down in the chair that was behind [her] and again pulled his penis out and was in there playing with it." She told him to get out, but Kelly moved to her bed and began "making remarks about [Rosa] getting on the bed." Rosa again told Kelly to leave, but he "thought it was funny." Kelly finally left after she went toward her door to "holler at somebody" for help. Rosa made another complaint to the landlord, who again directed her to call the police. She did, and they came to talk to Kelly, but nothing more happened.

The "last straw" for Rosa was when she started getting text messages from Kelly "about him wanting [her] to be naked on the bed and he wanted to use a dildo

on [her] and all this stuff." Now with documentary evidence of Kelly's unsavory behavior, Rosa contacted the police again.

Officer Dan Boesen responded to the complaint on February 24. He testified Rosa told him that Kelly "had been walking around partially nude, shaking his penis at her, and sending her unwanted messages." She showed Officer Boesen the incoming text messages on her cell phone from February 23 that were "sexual in nature." Officer Boesen later confirmed the phone number those messages were sent from belonged to Kelly. He also spoke with other tenants and visitors at the home, who reported witnessing similar behavior. One of those tenants and his brother said that the weekend before the officer's visit, they saw Kelly masturbating in the communal bathroom with the door open.

Kelly was charged by trial information with three counts of indecent exposure. He was found guilty under count one, which related to his conduct toward Rosa.[1] For that count, the jury was instructed the State had to prove the following beyond a reasonable doubt:

> 1. On or about the 22nd day of February, 2021, the Defendant exposed his genitals or pubes to Rosa. . . .
> 2. At the time, Rosa . . . was not the defendant's spouse.
> 3. The Defendant did the act with the specific intent to arouse or satisfy the sexual desire of the Defendant or another person.
> 4. The Defendant knew or reasonably should have known that the act was offensive to Rosa . . . or other viewers.
> 5. Rosa . . . was offended by the Defendant's act.

Kelly filed a motion for a new trial, in which he argued the jury's verdict was contrary to the evidence on the first three elements. The court ruled on the motion

---

[1] The jury acquitted Kelly under count two for his conduct toward the tenant and his brother who saw him in the bathroom, and the court granted Kelly a judgment of acquittal under count three for a victim who did not testify at trial.

at the start of the sentencing hearing, observing that its power to grant a new trial on weight-of-the-evidence grounds "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."  *See Ary*, 877 N.W.2d at 706.  After considering the evidence presented on each of the elements challenged by Kelly, the court found "that the greater weight of the evidence" supported the guilty verdict.  So the court denied Kelly's motion for a new trial.

Kelly appeals, challenging the weight of the evidence on same elements raised in his motion for a new trial: (1) the date of the offense, (2) whether he and the victim were spouses, and (3) whether his acts were specifically intended to arouse or satisfy his or the victim's sexual desires.[2]

The district court may grant a defendant's motion for a new trial when the verdict is contrary to the weight of the evidence.  *See* Iowa R. Crim. P. 2.24(2)(b)(6) (2022); *Ary*, 877 N.W.2d at 706.  "The weight-of-the-evidence standard requires the district court to consider whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict."  *Ary*, 877 N.W.2d at 706 (citation omitted).  "The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or the alternative verdict, but whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice."  *Id.* (quoting *Ellis*, 578 N.W.2d at 658–59).

---

[2] Kelly also suggests the court "wrongly employed a de facto 'sufficiency of the evidence analysis here, in a light most favorable to the [S]tate, rather than a 'contrary to the weight of the evidence'" standard.  *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998) (noting application of the wrong standard is a ground for reversal).  The record does not support that claim.  In ruling on the new-trial motion, the court carefully stated the standard to be applied from *Ellis* and evaluated Kelly's motion under that standard.

1.      *Date of Offense*

In claiming the jury's conclusion about the date of the offense was contrary to the weight of the evidence, Kelly points out that the marshaling instruction for count one required the State to prove that the offense occurred "on or about" February 22, 2021. He argues the "strong weight of the evidence was that the incident happened substantially earlier than" that date. Kelly relies on a written statement that Rosa gave to the police on February 24, which stated the "1st incident was about a month and [a] half ago" and then described the attic incident. Beyond that, he highlights portions of Rosa's "unreliable testimony revealing a lack of credibility, questionable veracity, with mixed up or made up dates, confusion about details, and inconsistent statements."

The first problem with Kelly's argument is that count one was not limited to the attic incident. The marshaling instruction, as quoted above, encompassed any act of Kelly exposing his genitals to Rosa. She testified there were three incidents that occurred between January and February 2021. Although Rosa could not recall the specific date of each, we agree with the State that it is generally "not required to prove the precise time and place of a crime." *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003); *cf. State v. Juste*, 939 N.W.2d 664, 676 (Iowa Ct. App. 2019) (approving of a jury instruction that stated the date of the alleged crime "is not critical to whether a crime did occur"). Although this principle has only been applied to sufficiency-of-the-evidence claims, at least so far as we can find, Kelly offers no reason why it shouldn't apply equally to claims invoking the weight of the evidence. He also fails to dispute that the acts described by Rosa occurred. Under

similar circumstances, our supreme court has held "any uncertainty as to the precise date is immaterial." *State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999).

Second, in exercising its discretion to deny the motion for a new trial, the district court considered and rejected Kelly's arguments about Rosa's "unreliable testimony" on when the incidents occurred:

> To the extent that [Rosa's] testimony was as the Defendant argues, conflicting and confusing about the date of the offense or other matters, I conclude that this could be attributable to the fact that there were multiple incidents involving multiple residents. . . . [O]verall I found her testimony regarding the elements of indecent exposure to be credible.

The court did exactly what it was supposed to do under a weight-of-the-evidence standard—it considered Rosa's "credibility, weighed the evidence, and gave reasons for its conclusion that the verdict was not contrary to the weight of the evidence." *State v. Finck*, No. 18-0731, 2019 WL 325811, at *2 (Iowa Ct. App. Jan. 23, 2019) (citing *State v. Reeves*, 670 N.W.2d 199, 209 (Iowa 2003)). Kelly makes no argument about *how* the court abused its discretion in those findings, but instead asks us to reweigh the evidence on appeal. *See Stendrup*, 983 N.W.2d at 246 ("On appellate review, however, we do not reweigh the evidence and make an independent determination on whether the verdict was contrary to the weight of the evidence."). "That determination was left to the discretion of the district court in the first instance." *Id.* And we find no abuse of the court's discretion on this issue.

*2. Spousal Status*

Next, Kelly claims the verdict was contrary to the weight of the evidence because the State presented no evidence that he and Rosa were not spouses.

Kelly is correct there was no direct evidence on that element. But there was an abundance of circumstantial evidence that Kelly and Rosa were not married to one another, and no evidence that they were. Because "[a] verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other,'" and there was no evidence on the other side of the issue, we conclude the district court did not abuse its discretion in denying the motion for new trial on this point. *See Ary*, 877 N.W.2d at 706 (citation omitted).

3.     *Intent*

Finally, Kelly claims the jury's conclusion that he had the specific intent to arouse the sexual desires of himself or another was contrary to the weight of the evidence. He says the alleged conduct occurred in his own bedroom, and he was "masturbating to satisfy his own sexual desires simply with respect to the porn." In other words, he argues "there was no evidence that he had any sexual purpose in being observed by [Rosa]" when she was exposed to his genitals during the attic incident.

As discussed above, the marshaling instruction did not limit the jury to the attic incident.[3] Even if it did, "[b]eing in one's home does not insulate a person from criminal liability for indecent exposure." *State v. Blair*, 798 N.W.2d 322, 326 (Iowa Ct. App. 2011). "The requisite intent to arouse or gratify the sexual desire of any person can be inferred from an accused's conduct, remarks, and all

---

[3] On another occasion that Kelly doesn't address, he followed Rosa into her own room, sat in a chair, and exposed and fondled himself. Then he moved to the bed and made remarks about Rosa getting on the bed. He also sent Rosa sexually-charged text messages.

surrounding circumstances." *State v. Jorgensen*, 758 N.W.2d 830, 837 (Iowa 2008). Kelly invited Rosa into his room while he was openly masturbating. He kept masturbating after she opened the door and tried to lure her into the room by putting the money he owed her on his bed. *See State v. Isaac*, 756 N.W.2d 817, 820 (Iowa 2008) (noting continued masturbation with exposure to an unwilling viewer can be evidence of sexual motivation); *see also Blair*, 798 N.W.2d at 326 ("[T]he fact that he was stroking his penis while standing in front of a bay window is sufficient evidence of Blair's sexual motivation.").

The district court considered these circumstances in denying Kelly's new-trial motion on this element:

> [Rosa] described at least one specific occasion when she observed Defendant masturbating in her presence, that her presence was known to him and he looked directly at her. She described his hand moving along his penis, seeing his penis in a state of arousal or semi arousal.

Considering all the evidence in the record, we cannot say the evidence preponderates heavily against the guilty verdict on the intent element—or any of the others challenged by Kelly on appeal. *See Ary*, 877 N.W.2d at 706. As a result, the district court did not abuse its discretion in denying Kelly's motion for a new trial.

**AFFIRMED.**